# McNEILL v. SOUTHERN RAILWAY COMPANY.
# SOUTHERN RAILWAY COMPANY v. McNEILL.

APPEAL AND CROSS APPEAL FROM THE CIRCUIT COURT OF THE
UNITED STATES FOR THE EASTERN DISTRICT OF NORTH CAR-
OLINA.

Nos. 370, 594.   Argued April 2, 3, 1906.—Decided May 28, 1906.

Although the dispute which was the origin of the controversy involved
less than $2,000, where the controversy presented by the bill involves
the right of enforcement of statutory penalties against complianant
of over $2,000, and also its right to carry on interstate business within
the State, which is worth more than $2,000, the Circuit Court has juris-
diction so far as the amount in controversy is concerned.

A suit brought by a railway company against the members of a state rail-
way commission to restrain them from interfering with complainant's
property and interstate business under a state statute alleged in the bill
to be unconstitutional as imposing burdens on interstate commerce is
not a suit against the State within the meaning of the Eleventh Amend-
ment.

The interstate transportation of cars from another State which have not
been delivered to the consignee, but remain on the track of the railway
company in the condition in which they were originally brought into
the State, is not completed and they are still within the protection of the
commerce clause of the Constitution.

While a State in the exercise of its police power may confer power on an
administrative agency to make reasonable regulations as to the place,
time and manner of delivery of merchandise moving in channels of in-
terstate commerce, any regulation which directly burdens interstate
commerce is a regulation thereof and repugnant to the Federal Constitu-
tion, and so *held* that an order of the North Carolina Corporation Com-
mission requiring a railway company to deliver cars from another State
to the consignee on a private siding beyond its own right of way was
a burden on interstate commerce and void.

*Quære* whether such an order applicable solely to state business would be
repugnant to the due process clause of the Constitution.

An injunction granted by the final decree should not be broader than the
necessities of the case require and if broader than that it will be modified,
as in this case, by this court.

THE Southern Railway Company, a corporation organized
under the laws of the State of Virginia, operates among others
a line of railway passing through Greensboro, North Carolina.
At that place the Greensboro Ice and Coal Company, during
the times hereafter mentioned, had a coal and wood yard,
located some distance from the main track and right of way
of the railroad. From this main track, however, there was a
private siding or spur track extending across the land of pri-
vate persons to the establishment of the ice and coal company.
In consequence of the views expressed in the opinion it is un-
necessary to review the facts as to the construction of this
spur track or to detail the course of dealing between the parties
concerning it prior to the origin of this controversy. Certain
it is that at one time the railroad delivered cars consigned to
the ice and coal company from its main track on to the spur
track in question. A dispute arose between the railway com-
pany and the ice and coal company concerning demurrage on
thirteen cars containing coal and wood consigned to the latter
company. In consequence of the refusal of the ice and coal
company to pay these charges the railway, on October 12, 1903,
notified the ice and coal company that after October 17, 1903,
it would only deliver cars consigned to the ice and coal com-
pany on the public tracks of the railway company at a place
known as the team track, set aside for the delivery to the pub-
lic generally of merchandise of that character. After receiv-
ing this notice the ice and coal company ordered four cars of
coal from points in the States of Pennsylvania, West Virginia
and Tennessee. These cars reached Greensboro between Oc-
tober 18, 1903, and October 22, 1903, were placed upon the
team track, and delivery was tendered to the ice and coal com-
pany. That company, however, declined to receive or unload
the cars elsewhere than on the siding above referred to. An
informal complaint on the subject was made by letter on Oc-
tober 20, 1903, to the North Carolina Corporation Commission,
composed of the appellants, Franklin McNeill, Samuel L. Rog-
ers and Eugene C. Beddingfield. After conversations had with

officers of the railway company, the commission, on October 31, 1903, made an order requiring the railway company, upon payment of freight charges, to make delivery of the cars beyond its right of way and on the siding referred to. Hearing was had on exceptions filed on behalf of the railway company, and on December 10, 1903, the commission made an order overruling the exceptions. The railway company appealed to the Circuit Court of Guilford County.

In the meantime, on November 2, 1903, after demurrage or car service charges had attached in respect to the four cars of coal, and to prevent unnecessary interference with its other business, the railway company removed the cars in question from the team track and placed them on a distant siding.

By chapter 164 of the Public Laws of North Carolina for 1899, creating the corporation commission, and by the acts amendatory thereof, as contained in chapter 20, revisal of 1905, as amended in 1905, it was provided as follows:

"1086. For violating rules.—If any railroad company doing business in this State by its agents or employés shall be guilty of a violation of the rules and regulations provided and prescribed by the commission, and if after due notice of such violation given to the principal officers thereof, if residing in the State, or, if not, to the manager or superintendent or secretary or treasurer if residing in the State, or if not, then to any local agent thereof, ample and full recompense for the wrong or injury done thereby to any person or corporation as may be directed by the commission shall not be made within thirty days from the time of such notice, such company shall incur a penalty for each offense of five hundred dollars. (1899, c. 164, s. 15.)

"1087. Refusing to obey orders of commission.—Any railroad or other corporation which violates any of the provisions of this chapter or refuses to conform to or obey any rule, order or regulation of the corporation commission shall, in addition to the other penalties prescribed in this chapter, forfeit and

pay the sum of five hundred dollars for each offense, to be recovered in an action to be instituted in the Superior Court of Wake County, in the name of the State of North Carolina on the relation of the corporation commission; and each day such company continues to violate any provision of this chapter, or continues to refuse to obey or perform any rule, order or regulation prescribed by the corporation commission shall be a separate offense. (1899, c. 164, s. 23.)

\* \* \* \* \* \* \* \*

"1091. Violation of rules, causing injury; damages; limitation.—If any railroad company doing business in this State shall, in violation of any rule or regulation provided by the commission, inflict any wrong or injury on any person, such person shall have a right of action and recovery for such wrong or injury in any court having jurisdiction thereof, and the damages to be recovered shall be the same as in an action between individuals, except that in case of willful violation of law such railroad company shall be liable to exemplary damages: Provided, that all suits under this chapter shall be brought within one year after the commission of the alleged wrong or injury. (1899, c. 164, s. 16.)"

On January 5, 1904, the bill in this case was filed in the Circuit Court of the United States for the Eastern District of North Carolina to perpetually enjoin the bringing of actions by the ice and coal company and by the commission to recover penalties or damages under the authority of the aforesaid statutory provisions, because of the noncompliance of the railway company with the order of the commission. As grounds for the relief prayed it was averred that the railway company had a common defense based upon the commerce clause of the Constitution of the United States, the provisions of the act of Congress to regulate commerce and the due process clause of the Constitution, and also because the corporation commission was an illegal body, as it was empowered to exercise judicial, executive and legislative functions contrary to the Constitutions of the State and of the United States. After the filing

of answers the cause was referred to a master to report the testimony and findings of fact to the court. The court, concluding that the order of the corporation commission was repugnant to the commerce clause of the Constitution, entered a decree in favor of the railway company and perpetually enjoined the enforcement of the order of the corporation commission and the bringing of actions to recover penalties or damages for a violation of that order. 134 Fed. Rep. 82. The corporation commission and the ice and coal company appealed and the railway company prosecuted a cross appeal upon the ground that the court below erred in not deciding that the corporation commission was an unconstitutional body because of the alleged mixed and peculiar character of the functions conferred upon it by the state statutes.

*Mr. R. H. Battle, Mr. E. J. Justice* and *Mr. Robert D. Gilmer,* Attorney General for the State of North Carolina, for appellants in No. 370 and appellees in No. 594:

The amount involved was less than $2,000, and the Circuit Court had no jurisdiction. The jurisdictional amount cannot be added to by reason of the probative force of the judgment in other cases. *Elgin* v. *Marshall,* 106 U. S. 578; *Holt* v. *Indiana Mfg. Co.,* 176 U. S. 68; *United States* v. *Wanamaker,* 147 U. S. 149; *Washington &c. Ry. Co.* v. *District of Columbia,* 146 U. S. 227; *New England Mort. Security Co.* v. *Gay,* 145 U. S. 123; *Baltimore* v. *Postal Tel. Co.,* 62 Fed. Rep. 500, 502.

The North Carolina Corporation Commission was made a court of record under article IV, section 12, of the state constitution. Chap. 164, Laws of 1899; amendment of 1903, c. 342, Pub. Laws. Being a court of record, its record imports verity, and having jurisdiction of the parties and the subject matter of the proceedings before it, the Southern Railway Company was bound by its judgment. *Caldwell* v. *Wilson,* 121 N. Car. 423, at p. 453, citing: *Jones* v. *Penland,* 19 N. Car. 358; *Hyatt* v. *Tomlin,* 24 N. Car. 149; *Duffey* v. *Averitt,* 27 N. Car. 455; *Middleton* v. *Duffey,* 73 N. Car. 72; *Wheeler* v. *Cobb,* 75 N.

Car. 21; *Etheridge* v. *Woodley,* 83 N Car. 11; *Penniman* v. *Daniel,* 95 N. Car. 341; *Roberts* v. *Allman,* 106 N. Car. 391; *State* v. *Jones,* 88 N. Car. 683, 685. See 2 Ency. of Pl. & Pr. 639.

The "due process" clause of the Fourteenth Amendment to the Constitution of the United States does not control forms of procedure nor regulate practice therein. Its requirements are complied with if the party complaining has. had sufficient notice and opportunity to defend. *Louisville and N. R. R.* v. *Schmidt,* 177 U. S. 230; *Long Island Water Supply Co.* v. *Brooklyn,* 166 U. S. 685; *Hooker* v. *Los Angeles,* 188 U. S. 314; *Iowa Central Ry. Co.* v. *Iowa,* 160 U. S. 389. This process is regulated by the state law, and the United States courts can only intervene when it is in conflict, with the Constitution and laws of the United States. *Walker* v. *Sauvinet,* 92 U. S. 90; *Leeper* v. *Texas,* 139 U. S. 462, 467.

The question in this case is, whether the order of the commission, made in pursuance of the powers conferred upon it by the state law violates the "commerce clause" of the. Federal Constitution.

Neither the act of Congress of February 4, 1887, establishing the Interstate Commerce Commission, nor the amendments thereto, adopted in 1889, 1893, and 1903, have any provision with reference to side-tracks at stations of railway companies. State legislation not intended to impede or interfere with interstate commerce, but rather to aid its safe and prompt delivery to consignees after reaching its place of destination, is not in conflict with the Constitution of the United States. *Gibbons* v. *Ogden,* 9 Wheat. 1; *Brown* v. *Maryland,* 12 Wheat. 419; *Wetson* v. *Black Bird Creek Marsh Co.,* 2 Pet. 245; *Mayor, &c. of New York* v. *Miln,* 11 Pet. 102; *Mobile* v. *Kimball,* 102 U. S. 691; *Bagg* v. *Wilmington, C. & A. R. Co.,* 109 N. Car. 281; *Leisy* v. *Hardin,* 135 U. S. 100; *Nashville, C. & St. L. R. R.* v. *Alabama,* 128 U. S. 96; *Western Union Tel. Co.* v. *James,* 162 U. S. 650; *Covington &c. Bridge Co.* v. *Kentucky,* 154 U. S. 204.

Under the police power the State can legislate for the public convenience, as well as for the public health, morals and safety.

*Lake Shore &c. R. R. Co.* v. *Ohio,* 173 U. S. 285; *Gilman* v. *Philadelphia,* 3 Wall. 713; *Wisconsin &c. R. R. Co.* v. *Jacobson,* 179 U. S. 294; *Olsen* v. *Smith,* 195 U. S. 332; *Pennsylvania R. R. Co.* v. *Hughes,* 191 U. S. 477; *Railroad Commission Cases,* 116 U. S. 307, 335; *Chicago, M. & N. R. R.* v. *Solon,* 169 U. S. 133.

The act of the general assembly of North Carolina constituting the corporation commission was not void as being in violation of the constitution of the State.

The act under which the North Carolina Corporation Commission was organized, and is exercising its functions for the benefit of the people of the State, is, in its essential particulars, so far as it relates to railway companies, but a rescript of the laws establishing the North Carolina Railroad Commission and making it a court of record (Laws of 1891, chapter 320 and chapter 498); and the acts establishing both the railroad commission and the corporation commission have been expressly declared to be constitutional by the Supreme Court. And like statutes, under which railroad commissions in other States have been organized, have been upheld by this court. *Railroad Commission Cases,* 116 U. S. 307; *Caldwell* v. *Wilson,* 121 N. Car. 425; *Express Co.* v. *Railroad,* 11 N. Car. 463; *Railroad Company* v. *Telegraph Co.,* 113 N. Car. 213; *Leavell* v. *Telegraph Co.,* 116 N. Car. 211; *Pate* v. *Railroad Co.,* 122 N. Car. 877; *Abbott* v. *Beddingfield,* 125 N. Car. 256; *Corporation Commission* v. *Railroad,* 127 N. Car. 283; *Corporation Commission* v. *Railroad,* 139 N. Car. 126.

This court is concluded by the decisions of the Supreme Court of North Carolina upon this point. *Duncan* v. *McCall,* 139 U. S. 449; *Leeper* v. *Texas,* 139 U. S. 462; *O'Neill* v. *Vermont,* 144 U. S. 323; *McNulty* v. *California,* 149 U. S. 645; *Bergemann* v. *Backer,* 157 U. S. 655; *Kohl.* v. *Lehlbach,* 160 U. S. 293; *Howard* v. *Fleming,* 191 U. S. 126.

*Mr. Claudian B. Northrop* and *Mr. Fabius H. Busbee* fo Southern Railway Company:

It has been conclusively settled by this court that where the

master and the court both concur this court will not disturb the findings, and in the language of Mr. Justice Brown "so far as there is any testimony consistent with the finding, it must be treated as unassailable." *Davis* v. *Schwartz*, 155 U. S. 636; *Wiscart* v. *D'Auchy*, 3 Dall. 321; *Bond* v. *Brown*, 12 How. 254; *Graham* v. *Bayne*, 18 How. 60; *Norris* v. *Jackson*, 9 Wall. 125; *Ins. Co.* v. *Folsom*, 18 Wall. 237; *The Abbotsford*, 98 U. S. 440; *Crawford* v. *Neal*, 144 U. S. 585; *Turner* v. *Ferris*, 145 U. S. 132; *Evans* v. *State Bank*, 141 U. S. 107; *Kimberly* v. *Arms*, 129 U. S. 512; *Morewood* v. *Enequist*, 23 How. 491; *The Ship Marcellus*, 1 Black, 414; *Dravo* v. *Fabel*, 132 U. S. 487; *Companie de Navigacion* v. *Brauer*, 168 U. S. 104; *The Richmond*, 103 U. S. 540; *The Conqueror*, 166 U. S. 110; *Stuart* v. *Hayden*, 169 U. S. 14; *Baker* v. *Cummings*, 169 U. S. 198.

The necessary diversity of citizenship exists, all of defendants being citizens and residents of a different State from that of which the complainant is a citizen and resident. There are also questions arising under the Constitution of the United States.

The amount or matter in dispute exceeds the sum or value of $2,000, exclusive of interest and costs, and is properly alleged. See *Blackburn* v. *Portland Gold Mining Co.*, 175 U. S. 570, 574; *Butchers' & Drovers' Stock Yards Co.* v. *Louisville & N. R. Co.*, 67 Fed. Rep. 35.

The question of jurisdiction, not having been raised in the case at bar by any special plea to the jurisdiction, it must be held under the rulings of this court that the facts sufficient to establish the jurisdiction are admitted when properly averred in the bill, as in the case here.

Both the master and the Circuit Judge have held that this suit involves the right of Southern Railway Company to conduct and manage its interstate business at Greensboro, North Carolina, and to dispose of its rolling stock, and to distribute it, and to refuse or permit its cars to be placed on private sidings, according to its reasonable rules and regulations, and that said right is of incalculable value to Southern Railway Com-

pany, and amounts to many thousands of dollars far in excess of the sum or value of $2,000 exclusive of interest and costs. *Butchers' & Drovers' Stock Yards Co.* v. *Louisville & N. R. R. Co., supra; Nashville, C. & St. L. Ry.* v. *McConnell,* 82 Fed. Rep. 65; *Scott* v. *Donald,* 165 U. S. 107; *Louisville* v. *N. R. R.* v. *Smith,* 128 Fed. Rep. 1.

This is not a suit against the State of North Carolina. A bill to restrain the executive officers of a State, under alleged authority of an unconstitutional statute, is not a suit against the State. *Scott* v. *Donald,* 165 U. S. 107 and cases cited; *Belknap* v. *Schild,* 161 U. S. 10, 18.

The equities of this bill are to prevent irreparable injury and a multiplicity of suits to which Southern Railway Company has a common defense, involving questions of law common to all said suits.

Where a failure to obey an order made by a state railroad commission, which was unauthorized and void, would under the state statutes, subject the company, in its daily business, to large numbers of individual actions, and to heavy penalties, a court of equity has jurisdiction of a suit to enjoin enforcement of such order, on the ground that its decree will avoid a multiplicity of suits and afford a more efficacious remedy than can be had at law. *Dinsmore* v. *So. Express Co.,* 92 Fed. Rep. 714, 715; *Smyth* v. *Ames,* 169 U. S. 517; *Va.-Carolina Chem. Co.* v. *Home Ins. Co.,* 113 Fed. Rep. 1; *Louisville & N. R. R.* v. *Smith,* 128 Fed. Rep. 1.

This is not a suit to restrain cases already pending in state courts contrary to section 720, United States Revised Statutes. *Texas & P. R. Co.* v. *Kuteman,* 54 Fed. Rep. 547. The corporation commission is not a "court" in the sense of the statute. *Gumee* v. *Brunswick,* 11 Fed. Cas. No. 5,872; *People* v. *Trustees,* 39 N. Y. Supp. 607; *People* v. *Van Allen,* 55 N. Y. 31; *White County Com'rs* v. *Givin,* 136 Indiana, 562; *Johnston* v. *Hunter,* 50 W. Va. 52; *Upshur* v. *Rich,* 135 U. S. 467; *Fuller* v. *County of Colfax,* 14 Fed. Rep. 177. See *Western Union Tel. Co.* v. *Wyatt,* 98 Fed. Rep. 335.

The Supreme Court of North Carolina has directly held that the corporation commission of North Carolina is not a "judicial court." *State ex rel. Caldwell* v. *Wilson*, 121 N. Car. 425; *State* v. *Wilmington and Weldon R. R. Co.*, 122 N. Car. 877.

The four cars of coal in question were and are articles of interstate commerce and beyond control of North Carolina Corporation Commission. Where the articles are still in the cars and undelivered, they are subjects of interstate commerce, and the transfer of said articles from the car to the depot or station is a part of the interstate transportation. In the case at bar it will be noted that even such transfer had not taken place, and unquestionably the interstate transportation was uncompleted. *Rhodes* v. *Iowa*, 170 U. S. 412; *Wall* v. *N. & W. R. R. Co.*, 52 W. Va. 485; *Connery* v. *Railroad Co.*, 92 Minnesota, 20.

Furthermore, the act to regulate commerce, itself, provides that it shall and does apply to the " transportation of passengers or property" . . . "from one State or Territory of the United States or the District of Columbia, to any other State or Territory of the United States or the District of Columbia, or from any place in the United States to an adjacent foreign country," etc. Congress having legislated no state regulations can apply. *Gulf, C. & S. F. R. Co.* v. *Hefley*, 158 U. S. 98; *Gulf, C. & S. F. R. Co.* v. *Miami S. S. Co.*, 86 Fed. Rep. 407. Switching and terminal charges are exclusively covered by act of Congress: *Fielder* v. *M., K. & T. R. Co.*, 42 S. W. Rep. 362; *Walker* v. *Keenan*, C. C. A. 7th Cir. 73 Fed. Rep. 755; *I. C. C.* v. *D. G. H. M. R. Co.*, 167 U. S. 633; *I. C. C.* v. *C., B. & Q. Ry. Co.*, 186 U. S. 320.

An article of interstate commerce remains wholly free from such state control, as long as it is in the original package. *Leisy* v. *Hardin*, 135 U. S. 100. Unquestionably coal stored in a car in which it originally started on its transit is still in the original package. *Austin* v. *Tennessee*, 179 U. S. 343.

This is not only the law of the United States but the statutes of North Carolina themselves expressly disclaim any applica-

tion to interstate commerce.    Act of March 6, 1899, c. 164, § 14.
See also *McGwigan* v. *Railroad Co.,* 95 N. Car. 428.

The rules of the North Carolina Corporation Commission as
to placing cars loaded with interstate freight, and its orders to
place the four cars of interstate freight now in question are void
because they interfere with interstate commerce; because they
deal with a subject National in its character, requiring uniform
treatment throughout the United States, and a subject over
which the action of Congress is exclusive, the States being pow-
erless to interfere at all; and because Congress has in fact leg-
islated on this particular subject, and the field is exclusively
occupied by existing acts of the Federal Government.

This court has never separated the cases into those which
aid interstate commerce and those which interfere with inter-
state commerce, and it has never held that the States may pass
acts in aid of commerce, while they are forbidden to pass acts
interfering with commerce.    The only classification of cases
ever made by this court were the three classes set forth in
*Bridge Co.* v. *Kentucky,* 154 U. S. 204, 209, where it divides
them as follows:

First, those in which the power of the State is exclusive;
second, those in which the States may act in the absence
of legislation by Congress; third, those in which the action
of Congress is exclusive and the States cannot interfere
at all.

The case of *Bridge Co.* v. *Kentucky,* 154 U. S. 204, has been
cited and reaffirmed in the following cases.    *W. U. Tel. Co.* v.
*James,* 162 U. S. 650, 655; *M. P. R. Co.* v. *Nebraska,* 164
U. S. 403, 416; *C. & L. Turnpike Co.* v. *Sandford,* 164 U. S.
578, 586; *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 150, 153;
*Henderson Bridge Co.* v. *Henderson,* 173 U. S. 592, 623; *K. & H.
Bridge Co.* v. *Illinois,* 175 U. S. 626, 632; *Hanley* v. *Kansas
City S. R. Co.,* 187 U. S. 617, 620; *Champion* v. *Ames,* 188 U. S.
321, 352; *St. Clair County* v. *Interstate S. & C. T. Co..* 192 U. S.
454, 457.

See also *Wabash &c. R. Co.* v. *Illinois,* 118 U. S. 557, which

has been cited and reaffirmed in many cases; holding that the times and modes of delivery of interstate freight are not the subject of state regulation.

This court has never disturbed its rulings in the *Wabash* case, and while some state statutes indirectly affecting interstate commerce have been sustained it will be found that they in no way conflict with or modify the doctrine laid down. This will more clearly appear by reference to some of the cases decided by this court sustaining certain state statutes.

Animals having contagious diseases may be excluded from a State: *M., K. & T. R. Co.* v. *Haber,* 169 U. S. 613; *Reid* v. *Colorado,* 187 U. S. 137. A law requiring the erection of fences and cattle guards: *Missouri Pac. R. Co.* v. *Humes,* 115 U. S. 512; *M. & St. L. R. Co.* v. *Beckwith,* 129 U. S. 26; *M. & St. L. R. Co.* v. *Emmons,* 149 U. S. 364. A state law requiring engineers operating passenger and freight trains to have their sight examined: *Smith* v. *Alabama,* 124 U. S. 465; prohibiting the consolidation of parallel or competing lines: *L. & N. R. Co.* v. *Kentucky,* 161 U. S. 677; separating the white and colored races: *L. N. O. & T. P. Ry. Co.* v. *Mississippi,* 133 U. S. 587; *Plessy* v. *Ferguson,* 163 U. S. 537; prohibiting the running of freight trains on Sunday: *Hennington* v. *Georgia,* 163 U. S. 299.

In reference to the *Hennington* case, Justices Brewer, White, Peckham and Shiras appear to have placed themselves on record in a dissenting opinion that they considered the *Hennington* case erroneously decided. *L. S. & M. S. Ry. Co.* v. *Ohio,* 173 U. S. 285, 325.

A statute forbidding the use of stoves as means of heating cars has been upheld: *N. Y., N. H. & H. R. R.* v. *New York,* 165 U. S. 628; requiring trains to stop at county seats: *Gladson* v. *Minnesota,* 166 U. S. 427; requiring a carrier to inform the shipper that a loss has not happened on its line: *Railroad Company* v. *Patterson,* 169 U. S. 311; requiring bills of lading to be signed by both parties has been upheld, as a rule of evidence: *Railroad Co.* v. *Patterson,* 169 U. S. 311.

A law requiring a railroad company to stop three trains each way at cities containing 3,000 inhabitants, has been upheld: *L. S. & M. S. R. Co.* v. *Ohio*, 173 U. S. 285; requiring a physical connection of tracks by two different railroads: *Wisconsin &c. R. Co.* v. *Jacobson*, 179 U. S. 287.

See the following cases where the regulations are held invalid. *I. C. R. R. Co.* v. *Illinois*, 163 U. S. 142, where a statute of Illinois was declared void because it attempted to require an interstate express train from Chicago to New Orleans to go three and one half miles out of its way and deviate from its course so as to stop at Cairo, Ill. Likewise a statute of Illinois requiring all passenger trains to stop at stations. *C. C. C. & St. L. R. Co.* v. *Illinois*, 177 U. S. 514.

In *Central Stock Yards Co.* v. *Louisville & Nashville R. R. Co.*, 192 U. S. 568, an attempt to compel the cars and freight received from one State to be delivered to another at a particular place and in a particular way was held an interference with interstate commerce and the constitution of Kentucky was impotent to produce any such result.

The rules of the corporation commission governing loading and unloading interstate freight, are in conflict with the Interstate Commerce Law, and must yield. *Gulf, C. & S. F. R. R.* v. *Hefley*, 158 U. S. 98; *L. & N. R. R. Co.* v. *Eubank*, 184 U. S. 27; *Interstate Com. Com.* v. *D. G. H. & M. Ry. Co.*, 167 U. S. 633; *Interstate Com. Com.* v. *C., B. & Q. R. R. Co.*, 186 U. S. 320; *Central Stock Yards Co.* v. *L. & N. R. R. Co.*, 118 Fed. Rep. 113.

It was also held by the commission that the Commerce Act covers demurrage, storage, terminal charges, and the distribution of cars, in so far as interstate freight is concerned, in the following cases. *Riddle et al.* v. *Pittsburg & L. E. R. R. Co.*, 1 I. C. R. 688; *Riddle* v. *N. Y., L. E. W. R. R. Co.*, 1 I. C. R. 787; *Heck* v. *R. R. Co.*, 1 I. C. R. 775; *Cutting* v. *F. R. & N. Co.*, 1 I. C. R. 294; *Rice et al.* v. *Western N. Y. & Penna. R. R.*, 3 I. C. R. 162; *Independent Refiners' Association* v. *W. N. Y. & P. R. R. Co.*, 4 I. C. R. 162; *Cattle Raisers' Association* v.

*Fort Worth & D. C. Ry. Co. et al.,* 7 I. C. R. 513; *American Warehousemen's Association* v. *Ill. Central R. Co.,* 7 I. C. R. 556, 592; *Pennsylvania Millers' State Association* v. *P. & R. Ry. Co. et al.,* 8 I. C. R. 531, 553, 558; *Palmer's Dock H. & P. Board of Trade* v. *Penn. R. R. Co.,* 9 I. C. R. 61. See also opinion of Circuit Court of Appeals for the Fourth Circuit announced February 6, 1906, in *United States ex rel. Greenbriar Coal & Coke Company* v. *Norfolk & Western Railway Company; Fielder* v. *Missouri, K. & T. Ry. Co.,* 42 S. W. Rep. 362.

Railroads have the right to make reasonable rules and regulations for the conduct of their traffic in their own interests and that of the public. *Harp* v. *Choctaw, O. & G. R. R. Co.,* 125 Fed. Rep. 445; *Robinson* v. *Baltimore & Ohio R. R.,* 129 Fed. Rep. 753; *Stock Yards Co.* v. *Keith,* 139 U. S. 128; *Donovan* v. *Pennsylvania Co.,* 199 U. S. 279.

No legislation can supersede the president, general managers, traffic officials and other officers of railway companies charged by the owners with the conduct of the company's business, but the power of the legislature is limited solely to the protection of the health, safety and convenience of the public, and the term "convenience" is not to be construed into the right of the legislature to usurp the management of the company. *Lake Shore &c. Ry. Co.* v. *Smith,* 173 U. S. 684.

It would be intolerable if a railway company should at any moment be subjected to orders by telegram from railway commissions to take cars out of trains at any points designated by said commissions and place them upon spur or side-tracks. Such action would disarrange the entire schedules of the railway company throughout its system. It would demoralize the service and endanger the safe conduct and movement of the trains, and would supersede the authority of the officers of the company and practically usurp the management of the railway.

A carrier is not obliged to receive or deliver freight at a mere switch track. The switch of the Greensboro Ice and Coal Company was not built under any order of the corporation commission or any state authority, nor was there any contract re-

quiring such delivery.   *Charnock* v. *Texas & Pacific Ry.*, 194 U. S. 432.

A railway company is not a common carrier as to private sidings or spur tracks, and the State has no power to force a railroad company to deliver its cars thereon.   *Mann* v. *Pere Marquette R. Co.*, 135 Michigan, 210, 219; *S. C.*, 97 N. W. Rep. 721, 724, and cases cited; *Jones* v. *Newport News &c. R. Co.*, 65 Fed. Rep. 136; *Mercantile Trust. Co.* v. *Columbus S. & H. R. Co.*, 91 Fed. Rep. 148.

The proceedings before the corporation commission were not due process of law.   The statute creates a body combining the three functions of government—legislative, executive and judicial.

The power to make rates is unquestionably a legislative function.   *Munn* v. *Illinois*, 94 U. S. 113, 144; *Peik* v. *R. R. Co.*, 94 U. S. 164, 168; *R. R. Co.* v. *Express Co.*, 117 U. S. 1; *R. R. Co.* v. *Minnesota*, 134 U. S. 418; *Reagan* v. *Farmers' L. & T. Co*, 154 U. S. 362; *R. R. Co.* v. *Gill*, 156 U. S. 649; *R. R. Co.* v. *I. C. C.*, 162 U. S. 184; *I. C. C.* v. *R. R. Co.*, 167 U. S. 479; *I. C. C.* v. *R. R. Co.*, 168 U. S. 144.

Assessment of property for taxation is an executive function. *County of Upshur* v. *Rich*, 135 U. S. 467.

It is clear that the legislative intent was not to create a body to exercise alone either the judicial, the executive or the legislative functions conferred upon North Carolina Corporation Commission, but the object of the entire legislation was to create a body that could exercise all of the functions conferred upon it, consequently it is impossible to separate one portion of the act from the other and declare that void, but the entire act must fall.   *Trade-mark Cases*, 100 U. S. 82; *United States* v. *Reese*, 92 U. S. 214; *Connolly* v. *Pipe Co.*, 184 U. S. 540, 565.

It necessarily follows that an order of any such unconstitutional body is void for it has been settled beyond question that an unconstitutional law cannot create even a *de facto* officer and that no office at all exists under an unconstitutional statute. *Norton* v. *Shelby County*, 118 U. S. 425.

Mr. Justice White, after making the foregoing statement, delivered the opinion of the court.

The legal principle which controls the determination of this cause renders it unnecessary to state many of the facts contained in this voluminous record or to consider and pass upon a number of the legal propositions urged in the cause. But three questions are essential to be passed upon. They are, First. Whether the record discloses that the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars. Second. Whether, as to the individual defendants below, this cause in fact was a suit against the State of North Carolina. Third. Whether the order and decision of the corporation commission of North Carolina and the statutes of that State upon which the same was based were void because in conflict with the commerce clause of the Constitution and the act of Congress to regulate commerce.

1. It was urged in argument on behalf of the commission and the ice and coal company that the extra cost or expense, if any, of placing the four cars of coal on the siding was the matter in controversy. In the court below it would seem to have been claimed that the one hundred and forty-six dollars demurrage was the question at issue. However this may be, as said by the trial court, although the demurrage dispute may have been the origin of the litigation, there is involved in the controversy presented by the bill not only the right to enforce against the railway company the payment of statutory penalties much in excess of two thousand dollars, but also the right of that company to carry on interstate commerce in North Carolina without becoming subject to such orders and directions of the corporation commission which so directly burdened such commerce as to amount to a regulation thereof. This latter right is alleged in the bill to be of the necessary jurisdictional value, the averment was supported by testimony, and the master and the court below have found such to be the

fact.   There is no merit in the contention that there is a want of jurisdiction to entertain the writ of error.

2. We think the real object of the bill may properly be said to have been the restraining of illegal interferences with the property and interstate business of the railway company, the asserted right to interfere, which it was the object of the bill to enjoin, being based upon the assumed authority of a state statute, which the bill alleged to be in violation of rights of the railway company protected by the Constitution of the United States. In this aspect the suit was not in any proper sense one against the State. *Scott* v. *Donald,* 165 U. S. 107, 112; *Fitts* v. *McGhee,* 172 U. S. 516, 529, 530.

3. The cars of coal not having been delivered to the consignee, but remaining on the tracks of the railway company in the condition in which they had been originally brought into North Carolina from points outside of that State, it follows that the interstate transportation of the property had not been completed when the corporation commission made the order complained of.   *Rhodes* v. *Iowa,* 170 U. S. 412.

By section 1066 of the revisal of 1905 the general powers of the North Carolina Corporation Commission were thus defined:

"1066. General powers.—The corporation commission shall have such general control and supervision of all railroad, street railway, steamboat, canal, express and sleeping car companies or corporations and of all other companies or corporations engaged in the carrying of freight or passengers, of all telegraph and telephone companies, of all public and private banks and all loan and trust companies or corporations, and of all building and loan associations or companies, necessary to carry into effect the provisions of this chapter, and the laws regulating such companies.   (1899, c. 164; 1901, c. 679.)"

By section 1100 it was provided as follows:

"1100. Demurrage; storage; placing and loading of cars.— The commission shall make rules, regulations and rates governing demurrage and storage charges by railroad companies and other transportation companies; and shall make rules gov-

erning railroad companies in the placing of cars for loading and unloading and in fixing time limit for delivery of freights after the same have been received by the transportation companies for shipment. (1903, c. 342.)"

Under these circumstances it is undoubted that by a circular, numbered 36 and dated July 9, 1903, the corporation commission promulgated rules fully regulating the right of railway companies to exact and the amount of charges which might be made for storage, demurrage, etc. And the pleadings make it clear that the order of the corporation commission complained of was not made upon the assumption of any supposed contract right which the corporation commission as a judicial tribunal was enforcing as between the ice and coal company and the railway company, but was exclusively rested upon the general administrative authority which the corporation commission deemed it had power to exercise in virtue of the rights delegated to it by the statutes of North Carolina as above stated. Thus, in paragraph 12 of the answer, the corporation commission averred as follows:

"These defendants are advised that the orders made by them, hereinbefore referred to, do not constitute an interference with interstate commerce as alleged in said paragraph 12 (referring to bill of complaint); nor with the right of the complainant to conduct its business according to its reasonable rules and regulations, except so far as the corporation commission has the right and power to control its rules and regulations by virtue of said act creating the corporation commission, and the amendment thereto, contained in chapter 342, Public Laws, 1903, whereby the power is expressly conferred upon the North Carolina Corporation Commission, by subsection 26, 'to make rules governing railroad companies in the placing of cars for loading and unloading, and in fixing time limit for the delivery of freights after the same have been received by the transportation companies for shipment.' And these defendants further say that, having full power to provide for placing cars for unloading, and in conformity with the rules of the said North

Carolina Corporation Commission, the orders ·complained of in the bill were in strict conformity to the law, and finally ad-·· judged and made after the complainant company had full opportunity to make defense as to its alleged rights in the premises."

Without at all questioning the right of the State of North Carolina in the exercise of ʹits police authority to confer upon an administrative agency the power to make many reasonable regulations concerning the place, manner and time of delivery of merchandise moving in the channels of interstate commerce, it is certain that any regulation of such subject made by the State or under its authority which directly burdens interstate commerce is a regulation of such commerce and repugnant to the Constitution of the United States. *Houston & Texas Central Ry. Co.* v. *Mayes,* 201 U. S. 321; *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500.

Not being called upon to do so, we do not pass upon all the general regulations formulated by the commission on the subject stated, but are clearly of opinion that the court below rightly held that the particular application of those regulations with which we are here concerned was a direct burden upon interstate commerce and void. Viewing the order which is under consideration in this case as an assertion by the corporation commission of its general power to direct carriers engaged in interstate commerce to deliver all cars containing· such commerce beyond their right of way and to a private siding, the. order manifestly imposed a burden so·direct and so onerous as to leave no room for question that it was a regulation of interstate commerce. On the other hand, treating the order as but the assertion of the power of the corporation commission to so direct in a particular case, in favor of a given person or corporation, the order not only was in its very nature a direct burden and regulation of interstate commerce, but also asserted a power concerning a subject directly covered by the act of Congress to regulate commerce and the amendments to that act, which forbid and provide remedies to prevent unjust dis-

criminations and the subjecting to undue disadvantages by carriers engaged in interstate commerce.

The direct burden and resulting regulation of interstate commerce operated by an alleged assertion of state authority similar in character to the one here involved was passed upon by the Circuit Court of Appeals for the Sixth Circuit in *Central Stock Yards Co.* v. *Louisville & Nashville R. R. Co.*, 118 Fed. Rep. 113.. The court in that case was called upon to determine whether certain laws of Kentucky imposed a direct burden upon interstate commerce and were a regulation of such commerce, upon the assumption that those laws compelled a common carrier engaged in interstate commerce transportation to deliver cars of live stock moving in the channels of interstate commerce at a particular place beyond its own line different from the general place of delivery established by the railway company. In pointing out that if the legislation in question was entitled to the construction claimed for it, it would amount to a state regulation. of interstate commerce, it was aptly and tersely said (p. 120):

"It is thoroughly well settled that a State may not regulate interstate commerce, using the terms in the sense of intercourse and the interchange of traffic between the States. In the case at bar we think the relief sought pertains to the transportation and delivery of interstate freight. It is not the means of making a physical connection with other railroads that is aimed at, but it is sought to compel the cars and freight received from one State to be delivered to another at a particular place and in a particular way. If the Kentucky constitution could be given any such construction, it would follow it could regulate interstate commerce. This it cannot do."

As we conclude that the court below rightly decreed that the order complained of was invalid because amounting to an unlawful interference with interstate commerce, we deem it unnecessary to consider the contentions made on the cross appeal of the railway company. And because we confine our decision to the issue which necessarily arises we do not intimate any

opinion upon the question pressed at bar as to whether an order which was solely applicable to purely state business, directing a carrier to deliver property upon a private track beyond the line of the railway company, would be repugnant to the due process clause of the Constitution.

The final decree which the Circuit Court entered and the writ of perpetual injunction issued thereon were, however, much broader than the necessities of the case required, and should be limited so as to adjudge the invalidity of the order complained of, restrain the institution by the defendant of suits or actions for the recovery of penalties or damages founded upon the disobedience of such order, and forbid future interferences under like circumstances and conditions with the interstate commerce business of the railway company. As so modified, the decree below is

*Affirmed.*