MOUNTAIN STATES TELEPHONE & TELEGRAPH CO. v. PUBLIC UTILITIES COMMISSION OF UTAH et al.

No. 12858.

District Court, D. Utah, Central Division.

Aug. 30, 1934.

308

Milton Smith, of Denver, Colo. (W. Q. Van Cott, of Salt Lake City, Utah, and Smith, Brock, Akolt & Campbell, of Denver, Colo., of counsel), for plaintiff.

John D. Rice, Deputy Atty. Gen. (Joseph Chez, Atty. Gen., on the brief), for defendants.

Herbert B. Maw, of Salt Lake City, Utah, for Logan City.

Before LEWIS and BRATTON, Circuit Judges, and JOHNSON, District Judge.

LEWIS, Circuit Judge.

The Public Utilities Commission of Utah entered an order after hearing reducing plaintiff's rates for one-party line telephone service from $3.00 to $2.50 per month and two-party line service from $2.50 to $2.25 per month at the Logan Exchange in Logan City, that state. It took that action for two reasons stated in its report, which immediately precedes its order, which are these:

First. It found that Provo City has a population of approximately 15,000 and Logan City 10,000 people; that the business and social needs and requirements for telephone service of the two cities are practically the same; that for the first six months of 1933 the average number of stations in service at Provo was 1890 and at Logan 1862; that plaintiff's net income at Provo for the same period was $656.98, and at Logan $1,086.37; that said comparative statement for said six months is fairly representative of the average number of stations in service and the average net income derived therefrom in recent years, both before and subsequent to said six months; that present rates for service at the Logan and Provo exchanges are uniformly the same, except one-party line residence service is 50¢ per month higher at Logan City than the same service at Provo, and two-party line residence service at Logan is 25¢ per month higher than at Provo, and its order reduced the rates for that service at Logan to the Provo rates. It found that difference to be a discrimination and based its order on title 76, c. 3, § 8, Revised Statutes of Utah, 1933, which provides:

"No public utility shall, as to rates, charges, service, facilities or in any other respect, make or grant any preference or advantage to any person, or subject any person to any prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to rates, charges, service, or facilities, or in any other respect, either as between localities or as between classes of service. The commission shall have power to determine any question of fact arising under this section."

The Commission said when discrimination is found to exist as provided by the statutes, it was the duty of the Commission to remove it. But the statute does not pretend to justify confiscatory action in the removal.

Second. The other reason was briefly stated by the Commission thus: "The evidence of the Company's witness clearly shows that it has earned for some years last past a fair return on its capital investment, devoted to telephone service in Utah." It said its order of reduction would only reduce the gross revenue at the Logan exchange slightly less than $3,000.

The plaintiff now seeks an interlocutory order enjoining the enforcement of the Commission's order. The bill of complaint alleges that said order is unlawful in that it denies due process and equal protection of law as guaranteed by the Fourteenth Amendment of the United States Constitution. It further alleges that the rates at the Logan exchange were less than reasonable or compensatory and were confiscatory before the Commission made the reduction.

When the plaintiff moved for the interlocutory writ the parties stipulated that the present fair value of plaintiff's property used and useful in the rendition of telephone service in the Logan exchange area is not less than $315,884; that revenues from local exchange service at Logan for ten months preceding October 31, 1933, were $48,233.49; that the necessary and reasonable operating expenses and taxes for said ten months were $43,180.22, leaving a net return during said period of $5,053.27, which extended to an annual basis would afford a net return of 1.9%; that operating results segregated to the Logan exchange subsequent to October 31, 1933, were not presently available but would not differ substantially from those set forth above, and that the present return on the present fair value of plaintiff's said property is not greater than 1.9%; that the rates required by the Commission's order, if enforced, would reduce the net income to not more than 1% on the present fair value of said property used and useful in said exchange area after paying the necessary and reasonable expenses of operation and taxes.

The attorney for the city of Logan filed its written motion with the Commission for the order which the Commission entered, in which the city asked that plaintiff here be restrained from charging the citizens of Logan more for one and two-party residence service than it was charging the citizens of Provo for the same service on the grounds:

"(1) That the present rate schedules in the two cities are discriminatory for one and two-party residence lines against the citizens of Logan, Utah, in violation of the state statute.

"(2) That the rates for one and two-party residence lines in the city of Logan are unreasonably high."

The plaintiff filed with the Commission its answer to said motion in which it alleged that the telephone rates in the Logan and Provo exchanges were on file with the Commission and had been approved by it and were so low as not to afford a fair return on its investment or present fair value of its property used and useful in furnishing telephone service at those two exchanges; that those rates were in fact confiscatory in violation of the United States Constitution and the Constitution of Utah; that if the rates not in exact parity in the two cities were to be equalized that should be achieved by increasing the Provo rates and not by reducing the Logan rates; that the procedure then pending before the Commission was a state-wide inquiry into the value of plaintiff's property and its rate structure throughout the state, and it asked that no action be taken in reference to the Logan and Provo rates until the conclusion of that inquiry. Nevertheless, the order was entered as ad interim, and further hearing on the state-wide inquiry was continued and was to be resumed on October 15, 1934, some six months after the order here complained of.

This controversy as to the differences between Logan City and Provo was presented to the Commission several years ago in another form. In that hearing the difference was between rates of return in the two cities, whereas in this case the difference is in rates for service. Both seem to be due to the fact that there is a greater number of rural stations in the Logan City exchange than in the Provo exchange. In the former proceeding the Commission entered an order which increased the rates for service in the Logan exchange, and presumptively that increase has since been in force. There was an appeal from the former order to the state Supreme Court. Its opinion is found in Logan City v. Public Utilities Commission of Utah, 77 Utah, 442, 296 P. 1006, 1009. The Commission found in that case that the rate of return at the Logan City exchange was 2.37%, and the court sustained the order of the Commission increasing the rates for service at Logan. The Court in its opinion said the evidence in that case disclosed that the rate of return from the Provo exchange was less than 1%; that the effect of the Commission's finding was that the rates were unreasonable and inadequate. It said:

"It is well settled that each rate should be compensatory, and that a utility cannot be required to perform service at a rate which is confiscatory. * * * A comparison of other rates would be persuasive or controlling only where shown that conditions were comparable and that the rates used for comparison were just and reasonable rates."

There is no finding by the Commission in this case that the rates at Logan or at Provo on one and two-party lines residence telephones were just and reasonable or that there had been any change in them since its order in the prior controversy.

On the stipulated facts there can be no doubt that the effect of the Commission's order would be a confiscation of plaintiff's property. In fact, the existing rates when that order was made were unreasonably low at the Logan exchange and also effected confiscation. The plaintiff was entitled to rates for service at Logan which would give it a fair and reasonable return on the fair value of its property used and useful in the service there. Northern Pac. Ry. Co. v. North Dakota, 236 U. S. 585, 35 S. Ct. 429, 59 L. Ed. 735, Ann. Cas. 1916A, 1; Norfolk & West Ry. v. Conley, Attorney General of West Virginia, 236 U. S. 605, 35 S. Ct. 437, 59 L. Ed. 745; Los Angeles Gas Corporation v. Railroad Commission of California, 289 U. S. 287, 53 S. Ct. 637, 77 L. Ed. 1180.

The state statute on which the Commission relied is no protection against the constitutional guarantee. In the late case of Columbus Gas & Fuel Co. v. Public Utilities Commission of Ohio, 292 U. S. 398, 54 S. Ct. 763, 766, 78 L. Ed. 1327, decided May 21, 1934, the Court said:

"We may assume in submission to the holding of that court (Supreme Court of Ohio [127 Ohio St. 109, 187 N. E. 7]) that the amortization allowance must be rejected if the rate-making process is to conform to the rule prescribed by statute, irrespective of any other. That assumption being made,

the conclusion does not follow that the statutory procedure may set at naught restrictions imposed upon the states and upon all their governmental organs by the Constitution of the nation. * * * Plainly the state must either surrender the power to limit the return or else concede to the business a compensating privilege to preserve its capital intact."

It is further contended for the Commission that its order should be regarded only as temporary and would probably be modified at the conclusion of the state-wide inquiry. The order itself made the reduction "pending the further hearing and determination of this case and until the further order of the Commission." But if the order is not stayed it will take effect as of last April, the state-wide inquiry will not be resumed until next October, and confiscation will go on. United Railways v. West, 280 U. S. 234, 249, 50 S. Ct. 123, 74 L. Ed. 390. On this subject the Supreme Court of Utah in Utah-Idaho Cent. Ry. Co. v. Public Utilities Commission, 64 Utah, 55, 227 P. 1025, 1027, said:

"The fact is that in the very nature of things the rates promulgated by the commission must be deemed permanent, unless the commission expressly provides to the contrary, and in the order itself provides what the rights of the parties shall be, with respect to the rates. Moreover, rates or charges for services rendered by a public utility, like those rendered by the company in the instant case, in the very nature of things, require adjustment either up or down from time to time, as changes in conditions or circumstances may require. The rates that are promulgated must, however, be deemed the rates to be charged upon the one hand and paid upon the other, whether they continue in force for a long or for a short period, unless the commission orders otherwise in the order promulgating the rates."

Some question is raised as to whether the controversy involves the jurisdictional amount, $3,000. From the progress that has been already made in the state-wide inquiry it does not seem probable that it will be closed in many months. Furthermore, the statute (Rev. St. Utah 1933, 76-6-25) imposes heavy penalties day by day for failure to comply with the Commission's order. These penalties would amount to many thousands of dollars in a very short time. We think the contention without merit. Bitterman v. L. & N. R. R. Co., 207 U. S. 205, 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693; Thompson v. Thompson, 226 U. S. 551,

33 S. Ct. 129, 57 L. Ed. 347; Western & Atl. Ry. v. Railroad Commission of Georgia, 261 U. S. 264, 43 S. Ct. 252, 67 L. Ed. 645; McNeill v. Southern Ry. Co., 202 U. S. 543, 26 S. Ct. 722, 50 L. Ed. 1142; Kansas City Sou. Ry. Co. v. Levee Dist. (C. C. A.) 15 F.(2d) 637.

When the bill was filed the plaintiff obtained a temporary restraining order on condition that it give bond to protect its patrons here involved in their rights as finally determined in this cause. That bond was given. An order may be entered granting an interlocutory injunction pending the cause.