ST. LOUIS & S. F. R. CO. v. ALLEN et al.

(Circuit Court, W. D. Arkansas, Ft. Smith Division. August 18, 1910.)

1. COMMERCE (§ 8*)—INTERSTATE COMMERCE—REGULATION—POWER OF STATES.
   While the states may enact valid legislation incidentally affecting interstate commerce in many ways, when Congress has acted in any matter pertaining to the regulation of such commerce, no state can by legislation interfere with, burden, or control it.
   [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. § 8.*]

2. COMMERCE (§ 61*)—STATE REGULATION—CONSTITUTIONALITY—INTERSTATE COMMERCE.
   Rule 44 of the Railroad Commission of the state of Arkansas, which provides that, "in case of failure on the part of the shipper to give routing instructions, it shall be the duty of the railroad receiving the shipment to forward it via such route as will make the lowest rate," as applied to interstate shipments, is unconstitutional as an interference with interstate commerce.
   [Ed. Note.—For other cases, see Commerce, Dec. Dig. § 61.*]

3. COURTS (§ 303*) — JURISDICTION OF FEDERAL COURTS — "SUIT AGAINST THE STATE."
   A suit against the members of a State Railroad Commission and the prosecuting attorney for a district of the state to enjoin the enforcement of an order made by the commission which is unconstitutional and without authority of law is not a "suit against the state" within the meaning of the eleventh constitutional amendment, and is within the jurisdiction of a federal court of equity.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 844, 844½; Dec. Dig. § 303;* States, Cent. Dig. §§ 191, 192.
   For other definitions, see Words and Phrases, vol. 7, p. 6778; vol. 8, p. 7809.
   Federal jurisdiction of suits against state, see note to Tindall v. Wesley, 13 C. C. A. 165.]

4. COURTS (§ 508*) — FEDERAL COURTS — EQUITY JURISDICTION — INJUNCTION STAYING ACTION IN STATE COURT.
   Under Rev. St. § 720 (U. S. Comp. St. 1901, p. 581), which prohibits the granting of an injunction by a federal court to stay proceedings in any court of a state except in matters relating to bankruptcy proceedings, a Circuit Court has no power to grant an injunction to stay an action, civil or criminal, pending in a state court when the bill is filed, and based on a state statute, although such statute as therein sought to be enforced is unconstitutional and an invasion of property rights.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1430; Dec. Dig. § 508.*
   Enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank of Providence, 16 C. C. A. 90; Central Trust Co. of New York v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. EQUITY (§ 233*)—PLEADING—GENERAL DEMURRER.**

In federal courts of equity, the rule is established that a demurrer to a whole bill must be overruled, if the bill, taken altogether, entitles complainant to some kind of relief.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 233.*]

In Equity. Suit by the St. Louis & San Francisco Railroad Company against R. P. Allen and others, constituting the Arkansas Railroad Commission, and D. B. Horsley, prosecuting attorney for the Fourth judicial circuit of Arkansas. On demurrer to bill. Demurrer overruled.

The facts alleged in the bill are substantially as follows: The complainant is a corporation organized under the laws of the state of Missouri, and is a citizen of that state. The defendants R. P. Allen and W. A. Falconer and J. W. Crockett, are citizens and residents of Arkansas, and constitute the Railroad Commission of the state of Arkansas. D. B. Horsley, prosecuting attorney for the Fourth judicial circuit of Arkansas, including the counties of Washington and Benton, is a citizen and resident of the Western district of Arkansas, and the amount in controversy includes, exclusive of costs, $2,000. The bill then alleges that complainant owns and operates a line of railroad extending from the city of St. Louis, in the state of Missouri, in a southwesterly direction to Seligman, in the state of Missouri, near which point it enters the state of Arkansas, passing through the counties of Benton and Washington, in which latter county the station of Johnson is located; thence through Crawford and Sebastian counties, in the state of Arkansas, to the city of Ft. Smith, in the latter county; thence in a southerly direction, crossing and re-crossing the line between the state of Arkansas and the state of Oklahoma, to a point at or near the town of Jenson; thence, continuing in the state of Oklahoma, to the town of Poteau, Okl., at which point freight destined to De Queen in Sevier county, Ark., is transferred to the Kansas City Southern Railway Company, a connecting line, and is by said line transported to a point on the Oklahoma and Arkansas state line near the northwest corner of Polk county in the state of Arkansas, where it crosses the Arkansas state line into the county of Polk, in the state of Arkansas, and through said county into the county of Sevier to De Queen, in the state of Arkansas.

The bill alleges: That the Railroad Commission prior to the filing of the bill adopted what is known as rule 44, in the words and figures as follows: "In case of failure on the part of the shipper to give routing instructions, it shall be the duty of the railroad receiving the shipment to forward it via such route as will make the lowest rate." Plaintiff alleges that the object of the Commission in passing said rule was to compel plaintiff and other railroads to ship freight which would naturally and properly be shipped by interstate shipment according to the rate fixed by the Interstate Commerce Commission under the laws of the United States a much greater distance without allowing the freight to pass beyond the state limits, and at a rate fixed by the State Commission far below the rate fixed by the Interstate Commerce Commission for the same class and character of freight between the same points, and to make a state rate in competition with the rates fixed by the Interstate Commerce Commission far below the rate fixed by the Interstate Commerce Commission at points where the state rate comes which was in competition with the rates so fixed for interstate shipments. That in pursuance of said determination, after having adopted and promulgated said rule, the said Railroad Commission on the 8th day of December, 1908, caused D. B. Horsley, the prosecuting attorney for the Fourth judicial district, to bring suit for a penalty of $3,000 against this plaintiff in the Washington circuit court, alleging and claiming that this plaintiff had incurred a liability in the sum of $3,000 for a failure to observe said rule, in that it on the 30th day of October, 1907, received a shipment of lime from the Ozark White Lime Company at Johnson, aforesaid, which was billed to and to be shipped

to De Queen in Sevier county, Ark., a point on the Kansas City Southern Railway Company's line, and to which point plaintiff's line did not extend, alleging and claiming that the shipper did not give routing instructions, and alleging and claiming that it was the duty of this plaintiff to have routed said shipment from Johnson, Ark., to Van Buren, Ark., a distance of 63 miles, there to have been transferred and delivered to the St. Louis, Iron Mountain & Southern Railway Company, and by it transported to Little Rock, Ark., a distance of 158 miles, and there to be transferred to the main line of the St. Louis, Iron Mountain & Southern Railway, to be by it transported to the town of Hope, in Hempstead county, Ark., a distance of 112 miles, there to be delivered to the St. Louis, San Francisco & New Orleans Railway Company, and by it to be transported to Ashdown, in Little River county, Ark., a distance of 32 miles, there to be delivered to the Kansas City Southern Railway Company to be by it transported in a due north direction, a distance of 35 miles to De Queen, in Sevier county, Ark., the total distance to be transported over a very circuitous route being 400 miles for a rate fixed for the entire distance by the State Railroad Commission of 12 cents per hundred pounds. That the act of this plaintiff which was complained of by said Commission was the transportation of said shipment from Johnson, in Washington county, Ark., by interstate lines on an interstate rate to Poteau, in the state of Oklahoma, a distance of 97 miles, where it delivered said shipment to the Kansas City Southern Railway Company, to be by it transported a distance of 107 miles to De Queen, in Sevier county, in the state of Arkansas, at a rate of 23 cents per hundred pounds, which was the rate fixed by the Interstate Commerce Commission under the act of Congress for that class of shipments for the entire distance, which rate was posted by plaintiff at its various stations, according to the act of Congress and rules prescribed by the Interstate Commerce Commission.

Plaintiff alleges that De Queen is almost in a direct line south from Johnson, and by the route which shipment moved was 204 miles from the point of origin to destination; that the route selected by plaintiff for said consignment was the usual and ordinary route for the shipment of freight between said points; that there was no other route by which the plaintiff could reasonably have made said shipment; that the defendant Railroad Commission is insisting that, instead of sending said shipment by said route, this plaintiff should have routed said shipment to Van Buren, Ark., in a southerly direction, a distance of 63 miles, from Van Buren to Little Rock in an almost easterly direction, a distance of 158 miles, from Little Rock to Hope in a southwesterly direction, a distance of 112 miles, from Hope to Ashdown in a northwesterly direction, a distance of 32 miles, and from Ashdown to De Queen in an almost due north course, and in direct line toward the point of origin of said shipment, a distance of 35 miles.

Plaintiff alleges that no shipment had ever been made between said points over this circuitous line of which it is aware; that no shippers, to plaintiff's knowledge, have desired that any shipment should move over such line; and that the only object that the Commission could have in trying to force the shipment to be made in this way was to bring the interstate rate of 23 cents per hundred pounds for this shipment, a distance of 204 miles, in direct competition with the rate fixed by this Commission on lines 400 miles in length, requiring many changes, at the rate of 12 cents per hundred pounds, thereby compelling the railroads to perform nearly double the service for a fraction more than one-half of the rate fixed by the Interstate Commerce Commission as a reasonable rate for the performance of this service.

Plaintiff alleges that said Railroad Commission has been insisting upon and pressing the trial of said suit by D. B. Horsley, prosecuting attorney, and endeavoring to force the collection of a penalty of $3,000 for the failure of this plaintiff to observe said rule; that the said Railroad Commission is insisting and claiming that said rule is a valid rule in full force and effect, and that plaintiff should observe the same in all shipments, and plaintiff alleges, if it should comply with said rule, it would thereby violate the act of Congress requiring it to ship at no greater or less rate between said points than that fixed for that class of freight.

Plaintiff alleges that no authority has been conferred upon said Commission to make, promulgate, and enforce said rule either by state or national legislation, and that said Commission does not possess such authority; that the rule is in direct conflict with the laws of the United States and the regulations of the Interstate Commerce Commission, and is void.

Plaintiff alleges that there are a large number of points upon its line within the state of Arkansas that are similarly situated, and that said rule, if enforced, would compel it to make constant shipments contrary to the rates established with the approval of the Interstate Commerce Commission, under the interstate commerce law, with which law the said rule directly conflicts, and plaintiff alleges that, should it not conform to said rule, it is threatened with innumerable suits for shipments made under like circumstances for penalties which are so severe that the complainant, in the event the rule is upheld, must suffer great and irreparable damages; that said rule was intended to deter plaintiff from obeying the interstate commerce law, and deter it from a compliance with the rules and rates fixed, and which have been approved by the Interstate Commerce Commission, and which rates had been posted by plaintiff as required by the interstate commerce act.

Plaintiff alleges that it has its regular rates which have been approved by the Interstate Commerce Commission of the United States and are posted in all of its offices; that the rates so fixed have been found by said Commission to be reasonable; that the rate fixed by the State Railroad Commission in competition with such rates is confiscatory and unreasonable, and that the service cannot be performed for the rate so fixed by said State Railroad Commission; that the amount allowed by the State Railroad Commission for this shipment (a carload) around this circuitous route with its divers changes only amounted to $36, whereas the penalties which are being sued for, for the failure to ship by this route, are insisted to be $3,000, and are entirely disproportionate to the failure of compliance, and are unreasonable and exorbitant.

Plaintiff alleges that said Commission and said prosecuting attorney are attempting to execute said rule and to compel the observance of the same by this plaintiff, and that this plaintiff will be involved in a multiplicity of suits and expensive litigation, unless defendants are restrained and enjoined from enforcing said rule.

To the end, therefore, that the plaintiff may have relief which it can only obtain in a court of equity, and that said defendants may answer the premises, but not upon oath or affirmation, the benefit whereof is expressly waived by plaintiff, and that the said defendants who are prosecuting the said action at law and threatening to prosecute other actions may be perpetually enjoined from further prosecuting said action and from instituting and prosecuting other like penalty suits, or taking any other steps to enforce said rule, and that said rule shall be declared to be null and void. And for such further and other relief as the nature of this case shall require and to your honors shall seem meet.

B. R. Davidson, for complainant.
Falconer & Woods, for defendants.

ROGERS, District Judge (after stating the facts as above). This bill contemplates two purposes:

(1) To enjoin the enforcement of rule 44 of the Arkansas Railroad Commission quoted above, as applied to interstate commerce.

(2) To restrain defendants from prosecuting a certain penalty suit now pending in the circuit court of Washington county, Ark., against the complainants.

The case now pending in the circuit court of Washington county, Ark., was originally here on removal, and was remanded on the ground that, while civil in form, in its nature it is penal, and not therefore removable. See 173 Fed. 572, where the history of the case will be found. This bill was then filed and a hearing had, and a temporary

restraining order was granted. It is now here on demurrer, upon which elaborate argument has been had, assailing the jurisdiction of the court. The language of Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257, quoted with approval in Ex parte Young, 209 U. S. 143, 28 Sup. Ct. 447 (52 L. Ed. 714, 13 L. R. A. [N. S.] 932), is most appropriate in this case:

"It is most true that this court will not take jurisdiction if it should not; but it is equally true that it must take jurisdiction if it should. The judiciary cannot, as Legislatures may, avoid a measure because it approaches the confines of the Constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given. The one or the other would be treason to the Constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is to exercise our best judgment, and conscientiously perform our duty."

It goes without saying that the power of Congress, under the commerce clause of the Constitution, is plenary, and without limitations other than those found in the Constitution itself. That question was somewhat elaborately discussed by this court in Smelzer v. St. Louis & San Francisco Railroad Company (C. C.) 158 Fed. 649, and the views of this court on that subject need not be repeated here. It is admitted that, notwithstanding this plenary power in Congress, the states may enact valid legislation incidentally affecting in many ways interstate commerce (Globe Elevator Co. v. Andrew [C. C.] 144 Fed. 879), but it is equally clear that, when the Congress has acted in any matter pertaining to the regulation of interstate commerce, no state can by legislation interfere with, burden, or control it, and any legislation purporting to accomplish that result perishes before the federal Constitution or legislation enacted in pursuance thereof. On the threshold of the question now to be determined, counsel for defendants, though called upon, has not ventured to cite any statute or other authority vesting in the Arkansas Railroad Commission power to promulgate rule 44 as applicable to interstate commerce, and the court knows of none. In the absence of such authority, the rule falls to the ground for want of any power to promulgate it. It follows that, there being no power to enact, there is no authority for enforcing it. The suit pending in the circuit court of Washington county, Ark., to enforce this rule was instituted under section 6813 Kirby's Digest of the Laws of Arkansas, which is as follows:

"Sec. 6813. If any person or corporation operating a railroad or express company in this state, or any receiver, trustee, or lessee of any such person or corporation as aforesaid, shall violate any of the provisions of this act. or aid or abet therein, or shall violate the tariff of charges, as fixed by said Commission, or any of the rules regarding railroads or express companies, as made by said Commission, and for which there is no other penalty prescribed in this act, such person or corporation, or receiver, trustee or lessee, shall be liable to a penalty not less than five hundred nor more than three thousand dollars for each violation of this act, or such tariff charges or rules and regulations, and such penalty may be recovered by an action to be brought in the name of the state of Arkansas, in the county in which such violation may occur. The Commission shall institute such action, and actions for the recovery of the penalties prescribed in this act, through the prose-

cuting attorney of the proper district, and no such suit shall be dismissed or compromised without the consent of the court and of said commissioners; and the prosecuting attorney shall be allowed a fee by the court not to exceed twenty-five per cent. of the amount collected; and if any prosecuting attorney shall neglect for fifteen days after notice to bring suit, the Commission may employ some other attorney at law to bring the same, who shall be allowed a fee therefor to be fixed by the court, not to exceed twenty-five per cent. of the amount collected, and in such case the prosecuting attorney shall not interfere; provided, that in all trials of cases brought for a violation of any tariff charges by said Commission, it may be shown in defense that such tariff so fixed was unjust. Nothing in this section shall be so construed as to in any manner interfere with the action for damages as provided in section 6808."

This statute does not pretend to confer authority to make rules. It provides for the punishment of the violation of rules already made. In the absence of a rule, valid because made by authority conferred on the Commission, this statute is dormant, and utterly unenforceable in any court. But, assuming rule 44 was made by authority conferred on the Arkansas State Railroad Commission when applied to intrastate commerce, what is its effect when applied to interstate commerce? Does its enforcement simply incidentally affect it so as to fall within the purview of the discussion in the case of Globe Elevator Co. v. Andrew (C. C.) 144 Fed. 871, or does it impose a burden on interstate commerce within the commerce clause of the Constitution and within the purview of admitted decided cases on that subject? The shipment set forth in the bill began at Johnson, Washington county, Ark., and passed through three counties of this state, then entered the state of Oklahoma, all on complainant's own line, and continued thereon to a point in Oklahoma, where it was turned over to a connecting line, the Kansas City Southern, and carried back into Arkansas, and on through that state to its point of destination at De Queen, Ark. That such shipment is interstate commerce is res adjudicata. Hanley v. Kansas City Southern, 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333. When does interstate commerce begin? In United States v. Boyer (D. C.) 85 Fed. 435, this court in a carefully prepared opinion, in which the authorities are carefully reviewed and cited, said that:

"When the (interstate) commerce begins is determined, not by the character of the commodity, nor by the intention of the owner to transfer it to another state for sale, not by his preparation of it for transportation, but by its actual delivery to a common carrier for transportation, or the actual commencement of its transfer to another state. At that time the power and regulating authority of the state ceases, and that of Congress attaches and continues, until it has reached another state, and become mingled with the general mass of the property in the latter state. That neither the production or manufacture of articles or commodities which constitutes subjects of commerce, and which are intended for trade and traffic with citizens of other states, nor the preparation for their transportation from the state where produced or manufactured prior to the commencement of the actual transfer or transmission thereof to another state, constitutes that interstate commerce which comes within the regulating power of Congress."

When the shipment of lime in controversy was delivered to complainant for shipment at Johnson, in Washington county, Ark., eo instanti it became interstate commerce. When the delivery was made, rule 44, if valid, eo instanti attached, and compelled compliance with

its provisions. It could not attach before delivery, for until delivery there was no shipper, and no shipment, and no relation of carrier and shipper subsisted. Rule 44, therefore, was, in effect not simply an interference with interstate commerce, but, if valid, it took complete control of an article of interstate commerce, and directed its routing and its freight rate. It deprived the complainant, not only of its right to charge and collect interstate rates fixed by law, but it compelled it, under heavy penalties, to disobey the laws of Congress, which it could not do without also incurring heavy penalties. The logic of defendants' contention is that the State Railroad Commission of Arkansas has the power to deprive an interstate carrier of its property by means of an illegal and unauthorized rule of its own, and compel it to disobey the laws of the United States, which have full and plenary power under the Constitution over all interstate carriers and interstate shipments. The contention is a reductio ad absurdum. This question is practically decided against the enforcement of rule 44 as applicable to interstate commerce by the Supreme Court of Arkansas in Porter v. St. Louis & Southern Railroad Company, 78 Ark. 182, 95 S. W. 453, where other cases are collated and cited to sustain that court. In that case Judge McCulloch quoted the following section of the interstate commerce law:

"That it shall be lawful for any common carrier subject to the provisions of this act to enter into any combination, contract, or agreement, expressed or implied, to prevent, by change of time schedule, carriage in different cars, or by other means or devices, the carriage of freights from being continuous from the place of shipment to the place of destination; and no break of bulk, stoppage, or interruption made by such common carrier shall prevent the carriage of freights from being treated as one continuous carriage from the place of shipment to the place of destination, unless such break, stoppage, or interruption was made in good faith for some necessary purpose, and without any intent to avoid or unnecessarily interrupt such continuous carriage, or to evade any of the provisions of this act." Act Feb. 4, 1887, c. 104, § 7, 24 Stat. 382 (U. S. Comp. St. 1901, p. 3159).

Commenting on that section he said:

"This section clearly prohibits the carrier from doing, either directly or indirectly, what the shipper has attempted to do in this case, and we see no reason why it should not be a protection to the carrier as well as a limitation upon its acts. As we understand them, the federal statutes providing for the regulation of interstate commerce, as well as the statutes of this state providing for the regulation of intrastate railroad traffic rates, are designed for the protection of shippers, each covering a separate field of operation, the latter yielding to the former, where there is possible conflict. The rate fixed under state legislation cannot be used to affect or frustrate the rate fixed under the superior power. To permit that would be a regulation of interstate commerce by state laws, a power conferred solely by the Constitution upon Congress. Louisville & N. R. Co. v. Eubank, 184 U. S. 47, 22 Sup. Ct. 277, 46 L. Ed. 416."

This statement of the law is sound. It recognizes the principle so admirably stated by Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat. 429, 4 L. Ed. 579, where, in discussing the question of the respective powers of the state and the United States government, he sums up the argument by saying:

"We have a principle which is safe for the states, and safe for the Union. We are relieved, as we ought to be, from clashing sovereignty; from inter-

fering powers; from a repugnancy between a right in one government to pull down, what there is an acknowledged right in another to build up; from the incompatibility of a right in one government to destroy, what there is a right in another to preserve."

The question may well be put that, if Congress has the exclusive and plenary power to regulate interstate commerce, how shall it be contended that the state can do the same thing? Such a doctrine necessarily involves a clash of sovereignties—an assertion of the right of the state to destroy what the United States have the constitutional right to build up. This notwithstanding, as Chief Justice Marshall said, "that the Constitution and the laws made in pursuance thereof are supreme, that they control the laws of the respective states, and cannot be controlled by them."

But it is said the bill shows no substantial equity in behalf of said complainant, and that the suit is one against the state. Eliminating from consideration for the moment the pendency of the suit in the circuit court of Washington county, Arkansas, and considering the bill as one seeking relief solely from the operation of rule 44 as applied to interstate commerce which is one of the primary purposes of the bill, we need not go further than the case of McNeill v. Southern Railroad Co., 202 U. S. 543, 26 Sup. Ct. 722, 50 L. Ed. 1142. That case arose out of an order promulgated by the North Carolina State Railroad Commission requiring that company to place certain cars containing interstate commerce on a certain spur track of the consignee at Greensboro, N. C., which was the point of destination of the shipment. The railroad company refused to obey the order and tendered the cars elsewhere, and the consignee refused to receive them unless placed on their spur track as the said Railroad Commission had directed. The state of North Carolina had a penalty statute similar to that of Arkansas quoted above, which authorized the shipper to recover any damages he might sustain by reason of the railroad company refusing to obey the orders of the State Railroad Commission, and also giving the Commission the right to recover a penalty of $500 for every disobedience of its rule. The statute will be found quoted in McNeill v. Southern Railroad Co., 202 U. S. 545, 26 Sup. Ct. 722, 50 L. Ed. 1142. The penalties were not so great as those of the Arkansas statute. Before any suits were brought against the railroad company, it filed a bill to perpetually enjoin the bringing of actions by the Commission to recover the penalties provided for in the statute because of the noncompliance of the railroad company with the order of the Railroad Commission. As ground for the relief prayed, it was averred that the railway company had a common defense based upon the commerce clause of the Constitution of the United States, the provisions of the act of Congress to regulate commerce, and the due process clause of the Constitution, and also because the State Corporation Commission was an illegal body. Answers were filed and the case referred to a master, and the Circuit Court concluded that the order of the State Corporation Commission was repugnant to the commerce clause of the Constitution, and entered a decree in favor of the railroad granting a perpetual injunction, enjoining the enforcement of the order of the State Corporation Commission, and the bringing of actions to recover

penalties, or damages, for a violation of that order. Treating the suit now pending in the circuit court of Washington county, Ark., as eliminated from consideration, it will be found impossible to distinguish the facts of that case from those of the case at bar. The circuit court granted a perpetual injunction, and both parties appealed to the Supreme Court of the United States, where the judgment of the lower court was affirmed as to the injunction. Mr. Justice White in that case said:

"We think the real object of the bill may properly be said to have been the restraining of illegal interferences with the property and interstate business of the railway company, the asserted right to interfere, which it was the object of the bill to enjoin, being based upon the assumed authority of a state statute, which the bill alleged to be in violation of rights of the railway company protected by the Constitution of the United States. In this aspect the suit was not in any proper sense one against the state. Scott v. Donald, 165 U. S. 107, 112 [17 Sup. Ct. 262, 41 L. Ed. 648]; Fitts v. McGhee, 172 U. S. 516, 529, 530 [19 Sup. Ct. 269, 43 L. Ed. 535.]"

Further on in the case, at page 561 of 202 U. S., at page 725 of 26 Sup. Ct. (50 L. Ed. 1142), he said:

"Without at all questioning the right of the state of North Carolina in the exercise of its police authority to confer upon an administrative agency the power to make many reasonable regulations concerning the place, manner, and time of delivery of merchandise moving in the channels of interstate commerce, it is certain that any regulation of such subject made by the state or under its authority which directly burdens interstate commerce is a regulation of such commerce and repugnant to the Constitution of the United States. Houston & Texas Central Ry. Co. v. Mayes, 201 U. S. 321 [26 Sup. Ct. 491, 50 L. Ed. 772]; American Steel & Wire Co. v. Speed, 192 U. S. 500 [24 Sup. Ct. 365, 48 L. Ed. 538]."

And still further on in the opinion, at page 562 of 202 U. S., at page 726 of 26 Sup. Ct. (50 L. Ed. 1142), he said:

"It is thoroughly well settled that a state may not regulate interstate commerce, using the terms in the sense of intercourse and the interchange of traffic between the states. In the case at bar we think the relief sought pertains to the transportation and delivery of interstate freight. It is not the means of making a physical connection with other railroads that is aimed at, but it is sought to compel the cars and freight received from one state to be delivered to another at a particular place and in a particular way. If the Kentucky Constitution could be given any such construction, it would follow it could regulate interstate commerce. This it cannot do."

It will be observed from the first quotation that Fitts v. McGhee, 172 U. S. 516, 19 Sup. Ct. 269, 43 L. Ed. 535, so strenuously urged by counsel as sustaining the contention that this is a suit against the state, is cited by Mr. Justice White in that case to show that it was not a suit against a state. The fact is Fitts v. McGhee is easily differentiated from McNeill v. Southern Railway Co., and, also, the case at bar; but it is unnecessary. A careful reading of Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363, will disclose the principle which governs the determination of the question as to whether a suit is against a state or not. The syllabus of that case sufficiently indicates the distinction. It is as follows:

"The cases reviewed in which suits at law or in equity against officials of a state, brought without permission of the state, have been held to be, either

suits against the state, and therefore brought in violation of the eleventh amendment to the Constitution; or, on the other hand, suits against persons who hold office under the state, for illegal acts done by them under color of an unconstitutional law of the state, and therefore not suits against the state."

In Ex parte Young, 209 U. S. 155, 156, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, Mr. Justice Peckham distinguished the case of Fitts v. McGhee from McNeill v. Southern Railway Co., supra, and other cases in line therewith and which are referred to in that opinion.

I have said enough to show that this is not a suit against the state, and that it sets forth a case of equity cognizance; but, independent of what I have already said, in Ex parte Young, 209 U. S. 124, 28 Sup. Ct. 441 (52 L. Ed. 714, 13 L. R. A. [N. S.] 932), it was decided (I quote the syllabus):

"Although the determination of whether a railway rate prescribed by a state statute is so low as to be confiscatory involves a question of fact, its solution raises a federal question, and the sufficiency of rates is a judicial question over which the proper Circuit Court has jurisdiction, as one arising under the Constitution of the United States. Whether a state statute is unconstitutional because the penalties for its violation are so enormous that persons affected thereby are prevented from resorting to the courts for the purpose of determining the validity of the statute, and are thereby denied the equal protection of the law, and their property rendered liable to be taken without due process of law, is a federal question, and gives the Circuit Court jurisdiction. Whether the state railroad rate statute involved in this case, although on its face relating only to intrastate rates, was an interference with interstate commerce, held to raise a federal question which could not be considered frivolous. A state railroad rate statute which imposes such excessive penalties that parties affected are deterred from testing its validity in the courts denies the carrier the equal protection of the law without regard to the question of insufficiency of the rates prescribed. It is within the jurisdiction, and is the duty, of the Circuit Court to inquire whether such rates are so low as to be confiscatory, and, if so, to permanently enjoin the railroad company, at the suit of one of its stockholders, from putting them in force, and it has power pending such inquiry to grant a temporary injunction to the same effect. The attempt of a state officer to enforce an unconstitutional statute is a proceeding without authority of, and does not affect, the state in its sovereign or governmental capacity, and is an illegal act, and the officer is stripped of his official character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to its officer immunity from responsibility to the supreme authority of the United States. It is not necessary that the duty of a state officer to enforce a statute be declared in that statute itself in order to permit his being joined as a party defendant from enforcing it. If by virtue of his office he has some connection with the enforcement of the act, it is immaterial whether it arises by common general law or by statute. No adequate remedy at law sufficient to prevent a court of equity from acting exists in a case where the enforcement of an unconstitutional state rate statute would require the complainant to carry merchandise at confiscatory rates if it complied with the statute and subjected it to excessive penalties in case it did not comply therewith and its validity was finally sustained. While a common carrier sued at common law for penalties under or on indictment for violation of a state rate statute might interpose as a defense the unconstitutionality of the statute on account of the confiscatory character of the rates prescribed, a jury cannot intelligently pass upon such a matter. The proper method is to determine the constitutionality of the statute in a court of equity in which the opinions of experts may be taken and the matter referred to a master to make the needed computations and to find the necessary facts on which the court may act."

All that I have now said relates to the bill, without reference to the suit pending in the circuit court of Washington county, but it shows that the remedy at law is inadequate in such a case as that. I now come to consider the bill in two other aspects:

(1) Is the granting of an injunction to stop the proceedings in the circuit court of Washington county, Ark., prohibited by section 720, Rev. St. U. S.?

(2) Can a United States Circuit Court under the conditions stated in the bill enjoin the prosecution of a criminal proceeding pending in a state court at the time the bill was filed?

It is broadly conceded that the general rule clearly established by repeated decisions of the court is against the doing of either, and therefore decisions establishing the rule need not be cited. Are there exceptions to the rule, and, if so, does the case at bar fall within the rule or within the exceptions? The two questions may be considered together, and for the present the proceedings pending in the circuit court of Washington county, Ark., will be treated, but not decided, as if it were a criminal proceeding.

The complainant urges that the case at bar falls within the exception announced in Davis & Farnum Manufacturing Co. v. Los Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47 L. Ed. 778. In that case Mr. Justice Brown accepted, as the established law of that court, the rule laid down in Re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402, to the effect that a court of equity has no general power to enjoin or stay criminal proceedings unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue there, or to prohibit the invasion of the rights of property by the enforcement of an unconstitutional law. In the discussion of that case he said:

"It would seem that if there were jurisdiction in a court of equity to enjoin the invasion of property rights through the instrumentality of an unconstitutional law that jurisdiction would not be ousted by the fact that the state had chosen to assert its power to enforce such law by indictment or other criminal proceeding."

This language must be considered, however, with reference to the precise facts before the court. It does appear in that case that criminal proceedings had been instituted in certain courts, but it does not appear that they were pending at the time the bill was filed; nor does the bill seek to enjoin any proceedings pending in the state court. In that case the bill was dismissed, however, because the complainants failed to show that they had any legal interest in that litigation, or that there was any lack of a complete and adequate remedy at law. Notwithstanding the language quoted, that was all that was decided in that case. Later Mrs. Dobbins filed a similar suit against the city of Los Angeles growing out of the same transaction, and she averred the same facts in her complaint contained in the Davis & Farnum Manufacturing Company complaint, and there was no lack of interest in the subject-matter of the litigation so far as she was concerned; but a careful analysis of the facts in that case will also show that at the time the bill in the Dobbins Case was filed it does not appear that any suit was pending in any municipal or state court of California, or that

the object and scope of the bill was to enjoin proceedings of any character then pending in any state court. A demurrer was interposed to her bill, and was sustained and the bill dismissed and the question then presented on appeal to the Supreme Court of the United States upon the demurrer. The case was reversed by the Supreme Court and remanded to the Circuit Court, with leave to the city to answer. The court said in Dobbins v. Los Angeles, 195 U. S. 241, 25 Sup. Ct. 22 [49 L. Ed. 169]:

"It is also urged by the defendants in error that a court of equity will not enjoin prosecution of a criminal case; but, as we have seen, the plaintiff in error in this case had acquired property rights which by the enforcement of the ordinances in question would be destroyed and rendered worthless. If the allegations of the bill be taken as true, she had the right to proceed with the prosecution of the work without interference by the city authorities in the form of arrest and prosecution of those in her employ. It is well settled that, where property rights will be destroyed, unlawful interference by criminal proceedings under a void law or ordinance may be reached and controlled by a decree of a court of equity. Davis & Farnum Mfg. Co. v. Los Angeles, 189 U. S. 207, 218 [23 Sup. Ct. 498, 47 L. Ed. 778], and cases therein cited."

This language, unless carefully analyzed with reference to the precise facts before the court, might easily mislead, but a careful analysis will show that the court did not intend, and did not in fact decide, that an injunction would be granted to stay criminal proceedings pending in a state court. It did not decide it because the question was not before it; it not appearing that, when the bill was filed, any suits were pending in the state court. These cases, therefore, are not authority for the support of the doctrine that a federal court will under any circumstances (except in bankruptcy cases) enjoin proceedings pending at the time the bill was filed in a state court, and I have been unable to find any authority which does. When this case was before the court on a motion to dissolve the injunction, it was thought at the time that these cases did support the complainant's contention in this case, but a more careful reading and analysis of the cases has convinced the court that the conclusion reached at that time was erroneous. The power of a federal court to enjoin state officers who attempt to get shelter under the unconstitutional acts of a state legislature to invade property rights of a citizen by threatening suits, civil or criminal in state courts, must not be confused with the provisions of section 720, Rev. St. (U. S. Comp. St. 1901, p. 581), which provides that:

"Sec. 720. The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

The two things are entirely separate and distinct.

It was held in Prentis v. Atlantic Coast Line, 211 U. S. 228, 229, 29 Sup. Ct. 67, 70 [53 L. Ed. 150], that:

"A state cannot tie up a citizen of another state, having property within its territory invaded by unauthorized acts of its own officers, to suits for redress in its own courts. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 391 [14 Sup. Ct. 1047, 38 L. Ed. 1014]; Smyth v. Ames, 169 U. S. 466, 517 [18 Sup. Ct. 418, 42 L. Ed. 819]. See McNeill v. Southern Railway Co., 202 U. S. 543 [26 Sup. Ct. 722, 50 L. Ed. 1142]; Ex parte Young, 209 U. S. 123,

181 F.—46

165 [28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932]. Other cases further illustrating this point are Chicago & N. W. Ry. Co. v. Dey. [C. C.] 35 Fed. 866 [1 L. R. A. 744]; Northern Pacific Ry. Co. v. Keyes [C. C.] 91 Fed. 47; Western Union Telegraph Co. v. Myatt [C. C.] 98 Fed. 335."

This court under these decisions has the unquestioned right to declare void (as being unconstitutional) rule 44, and the section of the statute under which the defendants are proceeding to enforce that rule, and to enjoin the institution of all civil or criminal proceedings in a state court, when that rule and statute are applied or sought to be applied to interstate commerce; but it has no power to disregard section 720, which prohibits it from staying, by injunction, proceedings already pending in court of a state, except in matters relating to bankruptcy proceedings. Unauthorized and unwarranted as is the assertion of authority upon the part of the State Railroad Commission in instituting the suit in the Washington circuit court under the statute and rule referred to, nevertheless, the Congress, which has the undoubted right, saw fit by section 720 to deny a United States court of equity the right to interfere with it, and it is the duty of this court to conform to the provisions of that statute. It may be admitted for the sake of this argument, but it is not decided, that the statute under which the defendants are proceeding in the suit now pending in the Washington circuit court, and rule 44, upon which such action is based, are both constitutional, as applied to commerce within the state, and. yet, they are void as applied to interstate commerce. As said in Dobbins v. Los Angeles, 195 U. S. 240, 25 Sup. Ct. 22, 49 L. Ed. 169:

"This court in the case of Yick Wo v. Hopkins, 118 U. S. 356 [6 Sup. Ct. 1064, 30 L. Ed. 220], held that although an ordinance might be lawful upon its face and apparently fair in its terms, yet, if it was enforced in such a manner as to work a discrimination against a part of the community for no lawful reason, such exercise of power would be invalidated by the courts."

So in Reagan v. Farmers' Loan & Trust Co., 154 U. S. 390, 14 Sup. Ct. 1051 (38 L. Ed. 1014):

"Neither will the constitutionality of the statute, if that be conceded, avail to oust the federal court of jurisdiction. A valid law may be wrongfully administered by officers of the state, and so as to make such administration an illegal burden and exaction upon the individual. A tax law, as it leaves the legislative hands, may not be obnoxious to any challenge, and yet the officers charged with the administration of that valid tax law may so act under it in the matter of assessment or collection as to work an illegal trespass upon the property rights of the individual. They may go beyond the powers thereby conferred, and, when they do so, the fact that they are assuming to act under a valid law will not oust the courts of jurisdiction to restrain their excessive and illegal acts. In Cunningham v. Macon & Brunswick Railroad, 109 U. S. 446, 452 [3 Sup. Ct. 292, 296 (27 L. Ed. 992)], it was said: 'Another class of cases is where an individual is sued in tort for some act injurious to another in regard to person or property, to which his defense is that he has acted under the orders of the government. In these cases he is not sued as, or because he is, the officer of the government, but as an individual, and the court is not ousted of jurisdiction because he asserts authority as such officer. To make out his defense he must show that his authority was sufficient in law to protect him. See Mitchell v. Harmony, 13 How. 115 [14 L. Ed. 75]; Bates v. Clark, 95 U. S. 204 [24 L. Ed. 471]; Meigs v. McClung, 9 Cranch, 11 [3 L. Ed. 639]; Wilcox v. Jackson, 13 Pet. 498 [10 L. Ed. 264]; Brown v. Huger, 21 How. 305 [16 L. Ed. 125]; Grisar v. McDowell, 6 Wall. 363 [18 L. Ed. 863].' Nor can it be said in such a case

that relief is obtainable only in the courts of the state; for it may be laid down as a general proposition that, whenever a citizen of a state can go into the courts of a state to defend his property against the illegal acts of its officers, a citizen of another state may invoke the jurisdiction of the federal courts to maintain a like defense. A state cannot tie up a citizen of another state, having property rights within its territory invaded by unauthorized acts of its own officers, to suits for redress in its own courts. Given a case where a suit can be maintained in the courts of the state to protect property rights, a citizen of another state may invoke the jurisdiction of the federal court. Mercer County v. Cowles, 7 Wall. 118 [19 L. Ed. 86]; Lincoln County v. Luning, 133 U. S. 529 [10 Sup. Ct. 363, 33 L. Ed. 766]; Chicot County v. Sherwood, 148 U. S. 529 [13 Sup. Ct. 695, 37 L. Ed. 546]."

It is a matter therefore of no importance, so far as this bill is concerned, whether the suit pending in the Washington circuit court is a civil or criminal suit. This court is not at liberty to interfere with it.

This brings us to the consideration of a question of practice in this court. The demurrer in this case is a general demurrer, and goes to the whole bill. The rule is established that a demurrer to a whole bill must be overruled if the bill, taken altogether, entitles complainant to some kind of relief. Livingston v. Story, 9 Pet. 632, 9 L. Ed. 255; Powder Co. v. Powder Co., 98 U. S. 126, 25 L. Ed. 77; Hilliard et al. v. The Good Hope (D. C.) 40 Fed. 608; Merriam et al. v. Holloway Pub. Co. et al. (C. C.) 43 Fed. 450; Buerk v. Imhaeuser (C. C.) 8 Fed. 457; La Croix v. May (C. C.) 15 Fed. 236; Mercantile Trust & Deposit Co. et al. v. R. I. Hospital Trust Co. et al. (C. C.) 36 Fed. 863; Pac. Live Stock Co. v. Hanly (C. C.) 98 Fed. 327; Failey v. Talbee (C. C.) 55 Fed. 892; N. Pac. R. Co. v. Roberts (C. C.) 42 Fed. 734, affirmed in 158 U. S. 11, 15 Sup. Ct. 756, 39 L. Ed. 873.

In view of what has been already said, it is unnecessary to consider the remaining grounds of demurrer.

In this case the demurrer will be overruled with leave to answer on next rule-day; but an order must go, modifying the injunction heretofore granted, in conformity with this opinion.