RAILROAD COMMISSION OF TEXAS ET AL V. W. A. QUERNER.

No. A-3087. Decided July 18, 1951.
Rehearing overruled October 10, 1951.
(242 S. W., 2d Series, 166.)

*Price Daniel,* Attorney General, *Charles E. Crenshaw* and *Durward M. Goolsby,* assistant Attorneys General, for petitioners.

The Court of Civil Appeals erred in holding that the railroad commission of Texas has no authority to cancel a certificate it issues to a federally authorized motor carrier to transport property in interstate commerce over certain highways within this state, on the grounds that it has violated the terms and conditions thereof by transporting property in intrastate commerce; also in holding that such certificate could be cancelled only upon a showing that such transportation is an undue burden or an unreasonable interference with the use of the highways. Eicholz v. Public Service Com. of Mo., 306 U.S. 268; Stotts v. Railroad Com. of Texas, 236 S.W. 2d 210, error refused; Railroad Commission v. Metro Bus Lines, 144 Texas 420, 191 S.W. 2d 10.

*A. M. Felts,* of Austin, for respondent.

In opposition to the contentions of petitioner, respondent cites Smith v. Wald Transfer & Storage Co., 97 S.W. 2d 991; Ex parte Truelock, 139 Texas Crim. Rep. 365, 140 S.W. 2d 167.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit involves the validity of an order of the Railroad Commission which cancelled a certificate it had granted to W. A. Querner to transport interstate commerce over the highways of this State between Houston and San Antonio, and vice versa. The certificate granted by the Railroad Commission authorized Querner to handle interstate commerce, but specifically prohibited him from handling intrastate commerce. In violation of the certificate issued by the Railroad Commission, Querner engaged in extensive intrastate commerce, and the Railroad Commission, after notice and hearing, cancelled the certificate. Querner instituted a suit in the District Court, and sought injunctive relief from the order of the Railroad Commission. After a hearing on the temporary proceedings, the trial court refused to grant the injunctive relief. On appeal, the Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment in favor of Querner. 236 S. W. 2d 853.

The sole issue involved here is whether the Railroad Commission had authority to cancel a certificate issued by the Railroad Commission authorizing the transportation of property in interstate commerce over the highways of this State, when, after due notice and hearing, it was found that such carrier had violated the terms of the certificate by transporting property in intrastate commerce between points in Texas.

The controlling facts are as follows: Respondent Querner is the holder of a certificate issued by the Interstate Commerce Commission, which authorized him to transport interstate commerce only between San Antonio and Houston, Texas. Before he could transport interstate commerce over the highways of Texas, he was compelled to obtain a certificate from the Railroad Commission of Texas. In accordance with the requirements of Article 911b, Vernon's Annotated Civil Statutes, he applied to the Railroad Commission of Texas for a certificate which would authorize him to transport such interstate commerce only over certain highways between Houston and San Antonio, Texas. On March 9, 1944, he applied to the Railroad

Commission for such certificate, which was granted and issued. The certificate contains the following restrictions:

"NOTHING herein shall be construed to authorize the transportation for compensation of commodities in INTRASTATE commerce from any Texas point to another Texas point, and the applicant is hereby PROHIBITED from engaging in any such operation.

"IN THE EVENT the Interstate Commerce Commission shall hereafter revoke or restrict the authority heretofore granted by it to applicant, then the authority herein granted to use a portion of the highways in the State of Texas shall become NULL and VOID, or RESTRICTED, in accordance with any such order of the Interstate Commerce Commission.

"THIS CERTIFICATE OF PERMIT to remain in effect from and after the date hereof, subject to the provisions, limitations, and restrictions of Chapter 314, Acts Regular Session of the Forty-first Legislature, 1929, and all amendments thereto, as well as the rules, regulations, and decisions of the courts, and the rules and regulations of the Railroad Commission of Texas, heretofore prescribed, or which may be hereafter prescribed under and pursuant to the authority conferred upon it by law."

Respondent asserts his rights under a certificate issued to him by the Interstate Commerce Commission, under the provisions of the Federal Motor Carrier Act of 1935, secs. 201-227, Acts 74th Congress, Senate Bill 1629, U. S. C. A., title 49, secs. 301 to 327, inclusive, and under the provisions of the Texas Motor Carrier Act (Acts 1927, c. 270, p. 399, as amended, now Article 911a et seq., Vernon's Annotated Civil Statutes). The Federal Motor Carrier Act was passed in 1935, and it is very comprehensive and contains many sections. Section 302 of this Act sets forth the declarations of policy and delegation of jurisdiction of the Interstate Commerce Commission, and in order to show the full purpose of the Act we copy part of this section, as follows:

"(a) The provisions of this chapter apply to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce and to the procurement of and the provision of facilities for such transportation, and the regulation of such transportation, and of the procurement thereof, and the provision of facilities therefor, is hereby vested in the Interstate Commerce Commission.

"(b) Nothing in this chapter shall be construed to affect the powers of taxation of the several States or to authorize a

motor carrier to do an intrastate business on the highways of any State, or to interfere with the exclusive exercise by each State of the power of regulation of intrastate commerce by motor carriers on the highways thereof." (Fed. 4, 1887, c. 104, Part II, sec. 202, as added Aug. 9, 1935, c. 498, 49 Stat. 543 and amended Sept. 18, 1940, c. 722, Title I, sec. 17, 54 Stat. 920; May 16, 1942, c. 318, sec. 2, 56 Stat. 300.)

Section 306 relates to the certificate of convenience and necessity, and in part reads: "No common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations."

Section 307 describes the issuance of the certificate, and subsection (b) thereof reads in part as follows: "No certificate issued under this chapter shall confer any proprietary or property rights in the use of the public highways." (Feb. 4, 1887, c. 104, Part II, sec. 207, as added Aug. 9, 1935, c. 498, 49 Stat. 551.)

Section 325 authorizes the investigation of motor vehicle sizes and weights and qualifications and hours of service of employees, etc.

Article 911b of the Texas Motor Carrier Act contains the following provisions: "Sec. 3. No motor carrier shall, after this Act goes into effect, operate as a common carrier without first having obtained from the Commission, under the provisions of this Act, a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity require such operation. No motor carrier shall, after this Act goes into effect, operate as a contract carrier without first having obtained from the Commission a permit so to do, which permit shall not be issued until the applicant shall have in all things complied with the requirements of this Act." As amended Acts 1931, 42nd Leg., p. 480, ch. 277, sec. 3.

Section 12 (b) of Article 911b reads as follows: "The Commission at any time after hearing, had, upon notice to the holder of any certificate or permit and after opportunity given such holder to be heard, may by its order revoke, suspend or amened any certificate or permit issued under the provisions of

this Act, where in such hearing the Commission shall find that such hearing the Commission shall find that such certificate or permit holder has discontinued operation or has violated, refused or neglected to observe the Commission's lawful orders, rules, rates or regulations or has violated the terms of said certificate or permit; provided, that the holder of such certificate or permit shall have the right of appeal as provided in this Act." As amended Acts 1931, 42nd Leg., p. 480, ch. 277, sec. 12.

Petitioner contends that under the provisions of Article 911b it has the authority to cancel respondent's certificate authorizing him to handle interstate commerce over certain highways in Texas. Respondent, on the other hand, contends that when the Interstate Commerce Commission issued him a certificate of public convenience and necessity to handle interstate commerce over certain highways in Texas under the Federal Motor Carrier Act, and the Railroad Commission of Texas under Article 911b also issued him a certificate to handle interstate commerce over certain highways in this State, the Railroad Commission did not have the authority to annul and cancel such certificate on the sole ground that he had handled intrastate commerce in violation of the certificate.

The chief law enforcement officer of the Railroad Commission filed charges against respondent for the violation of his certificate by handling intrastate commerce, and a hearing was had on the charges. Evidence was introduced showing that respondent had violated his certificate by handling intrastate freight. It was shown that a previous complaint had been filed against him, and it was stipulated that respondent did not have knowledge of the unauthorized movement of intrastate freight alleged in the first complaint, and that steps would be taken that such violation would not occur in the future; and the case was dismissed by order of November 17, 1949. The second complaint was filed against respondent for later violations of his certificate, and the Railroad Commission found that he had in more than twenty instances violated his certificate by handling intrastate commerce. The Railroad Commission also found that his operations were wholly unauthorized and unlawful, and in violation of his certificate, and that his interstate certificate to use the highways of Texas should be cancelled, and that respondent should be prohibited from using the highways described in the certificate, and it was so ordered.

■ The Federal Motor Carrier Act assumes primary jurisdic-

tion and control of interstate commerce, and the Texas Motor Carrier Act assumes primary jurisdiction and control of intrastate commerce over the highways in this State. Under the Federal Motor Carrier Act the Interstate Commerce Commission has the authority to issue to a carrier of interstate commerce a certificate of public convenience and necessity; but such authority does not deprive the State from protecting its highways and the public safety, and before a carrier can operate in interstate commerce over the highways in this State, under a certificate issued by the Interstate Commerce Commission, it must first obtain a certificate from the Railroad Commission of Texas to do so. This enables the Railroad Commission to protect the safety of the public and to prevent damage to the public highways of the State. While the Texas law makes no distinction in the regulation of intrastate and interstate carriers, unquestionably the Railroad Commission has the power to regulate the handling of intrastate commerce over the highways of this State. The Railroad Commission has the power, for good cause, to cancel a certificate issued to a carrier engaged exclusively in intrastate commerce in violation of his permit. Stotts v. Railroad Commission of Texas, Tex. Civ. App., 236 S. W. 2d 210, writ refused; Smith v. Wald Transfer & Storage Co., Tex. Civ. App., 97 S. W. 2d 991, writ dismissed. However, in this instance the Interstate Commerce Commission had issued a certificate authorizing respondent to handle interstate commerce, and this was supplemented by the Railroad Commission's issuing to him a permit to handle interstate commerce on certain highways in this State. The Railroad Commission in granting the permit to respondent necessarily embodied a finding that the highways designated would bear the additional burden of such operation, and that the public safety would not be endangered. The hearings in this case were based upon the ground that respondent was engaged in the handling of intrastate commerce, in violation of the certificate issued by the Railroad Commission, and for this reason the certificate authorizing the handling of intrastate commerce was cancelled. No issue was made that the handling of intrastate commerce by respondent affected the highways or the public safety, and no finding was made on that question. Therefore the sole question presented here is whether the Railroad Commission under this record had the authority to cancel the certificate authorizing respondent to handle interstate commerce, on the sole ground that that he had handled intrastate commerce in violation of his permit. Since the Railroad Commission did not seek a cancellation of the certificate on the grounds that intrastate commerce would affect the highways or the public safety, that question is not before

us, and it is unnecessary to express an opinion on that issue.

■ Under the constitution of the United States the power of Congress to regulate interstate commerce is supreme. Southwestern Greyhound Lines v. Railroad Commisson of Texas, 128 Texas 560, 99 S. W. 2d 263, 190 A. L. R. 1235; Western Union Tel. Co. v. Jacobs, 115 Texas 240, 280 S. W. 733; Nevill v. Gulf, C. & S. F. R. Co. (Tex. Com. App.), 244 S. W. 980; Morris v. State ex rel, Gussett, 62 Texas 728; 9 Tex. Jr., p. 280, sec. 15, and cases cited; Rosenberger v. Pacific Express Co., 241 U. S. 48, 36 Sup. Ct. 510, 60 L. Ed. 880; Chicago, Rock Island & Pac. Ry. Co. v. Hardwick Farmers' Elev. Co., 226 U. S. 426, 33 Sup. Ct. 174, 176, 57 L. Ed. 284, 46 L. R. A. (N. S.), 203; NcNeill v. Southern R. Co., 202 U. S. 543, 26 Sup. Ct. 722, 50 L. Ed. 1142; 15 C. J. S., Commerce, p. 269, sec. 13; 11 Amer. Jur., p. 11, sec. 9. In the exercise of that power the Federal Motor Carrier Act was passed, and all existing State Laws in conflict therewith were superseded. Southwestern Greyhound Lines v. Railroad Commission of Texas, 128 Texas 560, 99 S. W. 2d 263, 109 A. L. R. 1235; Greer. v. St. Louis, S. F. & T. Ry. Co., 109 Texas 36, 194 S. W. 939; Chicago, R. I. & G. Ry. Co. v. DeBord, 109 Texas 20, 192 S. W. 767; Western Union Tel. Co. v. Bailey, 108 Texas 427, 196 S. W. 516; 9 Tex. Jur., p. 288, sec. 20, and cases cited; Erie R. Co. v. People of State of New York, 233 U. S. 671, 34 Sup. Ct. 756, 58 L. Ed. 1149, 52 L. R. A. (N. S.) 266, Ann. Cas. 1915D, 138; Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Spokane & I. E. R. Co. v. Campbell, 241 U. S. 497, 36 Sup. Ct. 683, 60 L. Ed. 1125; 15 C. J. S., Commerce, p. 272, sec. 15; 11 Amer. Jur., p. 14, sec. 12. This insures uniformity of regulation. It is quite obvious that many conflicts would occur, and that much confusion would follow if the different States had the power to regulate interstate commerce independent of the power of Congress. However, the power is reserved to the States to protect the safety of the public and the highways from damage by a carrier of interstate commerce, holding a certificate of public convenience and necessity issued by the Interstate Commerce Commission under the federal law, by denying such carrier the use of the highways, if such use affects the public safety or damage the highways.

■ Petitioner contends that Article 911b, Section 12b, authorizes the action of the Railroad Commission in cancelling the permit as was done. It is also contended that the opinion of the Court of Civil Appeals in this case is in conflict with the case of Stotts v. Railroad Commission of Texas, Tex. Civ. App., 236

S. W. 2d 210, writ refused, and the opinion of the Supreme Court of the United States in the case of Eichholz v. Public Service Commission of Missouri, 306 U. S. 268, id. 622, 59 Sup. Ct. 532, 83 L. Ed. 641.

We do not interpret the statutes and the decisions cited as supporting these contentions. The certificate involved was issued under the federal and state laws relating to interstate commerce, and both laws must be construed together in the light of the specific purposes for which they were enacted. Both federal and state tribunals are authorized to act under such laws, and respondent was operating under their sanction. No testimony was offered to prove that the handling of intrastate commerce by respondent jeopardized the safety of the public or damaged the highways, and the cancellation of the permit was not based upon either of those grounds. To construe Article 911b, Section 12b, as petitioner contends would give the Railroad Commission power to cancel permits and bring on a conflict in the operations under the two laws not contemplated or authorized by the two Acts when construed together. In the Scotts case the permit issued by the Railroad Commission involved intrastate commerce exclusively, and it was held that the Railroad Commission had the authority to cancel such permit. In that case the issue of cancelling a permit to handle interstate commerce was not involved.

Here respondent operated under a certificate issued by the Interstate Commerce Commission and also under a permit issued by the Railroad Commission. The consent of both was required to authorize him to handle interstate commerce over the highways of the State. We think the facts of the Eicholz clearly distinguished it from this case. In that case Eicholz held no certificate from the Interstate Commerce Commission authorizing him to handle interstate commerce. He was operating on a permit issued by the State of Missouri. He had applied for a certificate to handle interstate commerce, but the application was pending before the Interstate Commission, and had not been acted upon. Prior to the enactment of the Federal Motor Carrier Act, Eicholz had obtained a certificate to handle interstate commerce from the Missouri Commission, but under that certificate he carried on an intrastate business. The Missouri Public Service Commission cancelled the certificate on the ground that Eicholz was carrying on an intrastate business, and the Missouri Commission had not given him any such authority. It is argued that in the Eicholz case the carrier was operating under the authority of the Interstate Commerce Commission,

because the Federal Motor Carrier Act contained a clause which provided that if the carrier was engaged in the operation of a motor carrier at the time the Act was enacted, the Interstate Commerce Commission would issue him a permit without further inquiry, subject to other provisions of the Act not pertinent here, and that until such permit was acted upon he had the right to carry on his business. The Missouri Commission revoked his permit. In the Eicholz case the Supreme Court of the United States sustained the action of the Commission, and said:

"Second. When the Commission revoked the permit, the Interstate Commerce Commission had not acted upon appellant's application under the Federal Motor Carrier Act and meanwhile the authority of the state body to take appropriate action under the state law to enforce reasonable regulations of traffic upon the state highways had not been superseded.

"Third. Appellant did not seek from the state commission a certificate entitling him to do an intrastate business. Under the Commission's rule, he had his choice either to refrain from carrying property between points in Missouri or to secure a certificate of public convenience and necessity as an intrastate carrier. The validity of the requirement of such a certificate to promote the proper and safe use of the state highways is not open to question."

Supreme control over the operation of interstate commerce was assumed by the Federal Motor Carrier Act. Respondent was issued a permit thereunder to handle interstate commerce, subject to the power of the Railroad Commission to deny the use of highways for the operation of interstate commerce, on the ground that it would interfere with the safety of the public or would damage the highways. The Railroad Commission found that the handling of interstate commerce by respondent would not affect the public safety or damage the highways, and issued respondent a permit to handle interstate commerce over the highways in this State.

Respondent was found guilty of violating the permit issued to him by the Railroad Commission, by handling intrastate commerce, and we fully appreciate the desire of the Railroad Commission to stop such violations. However, we find nothing in the federal law, or in the authoritative federal decisions construing that law, which authorizes the Railroad Commission to cancel respondent's permit to handle interstate commerce, solely on the ground that he had violated his permit by handling intrastate commerce.

■ The State is not without remedy to enforce the rules regarding violations of permits issued by the Railroad Commission. Article 1690b, Vernon's Annotated Penal Code, provides in detail the penalties for transporting intrastate commerce without authority from the Railroad Commission, and that injunctive relief may be granted to enforce the provisions of the statute.

We construe the opinion of the Court of Civil Appeals to hold that the Railroad Commission had the authority to prohibit respondent from handling intrastate commerce under his certificate, and that it also held that the Railroad Commission did not have the authority to interfere with his right to handle intrastate commerce.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered July 18, 1951.

Rehearing overruled October 10, 1951.