**E & B CARPET MILLS, A DIVISION OF ARMSTRONG WORLD INDUSTRIES, INC., et al. Appellants,**

v.

**The STATE of Texas, et al., Appellees.**

**No. 3–88–197–CV.**

Court of Appeals of Texas, Austin.

Aug. 9, 1989.

Rehearing Denied Sept. 27, 1989.

R. James George, Jr., Graves, Dougherty, Hearon, & Moody, Austin, for E & B Carpet Mills and Reeves Transp. Co.

Douglas Hearne, Hearne, Knolle, Lewallen, Livingston & Holcomb, Austin, for Central Freight Lines, Inc., and Merchants Fast Motor Lines, Inc.

Robert Ozer and Anne E. Swenson, Asst. Attys. Gen., Austin, for the State of Texas.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

GAMMAGE, Justice.

The State of Texas sued E & B Carpet Mills (E & B), a Division of Armstrong World Industries (Armstrong), and Reeves Transportation Company (Reeves) seeking penalties and a permanent injunction for alleged violations of the Texas Motor Carriers Act. Tex.Rev.Civ.Stat.Ann. art. 911b (1964 and Supp.1989). Merchants Fast Motor Lines, Inc. (Merchants), Central Freight Lines, Inc. (Central), and Red Arrow Freight Lines, Inc. intervened.[1] E & B and Reeves appeal from a summary judgment in favor of the State. We will reverse the judgment of the trial court and remand the case for trial.

The controversy arises out of Armstrong's desire to use lower interstate trucking rates for shipments in Texas rather than the higher intrastate rates. E & B

---

1. Red Arrow Freight Lines, Inc., moved for and was granted leave to withdraw from the trial court proceeding.

ships carpet from Dalton, Georgia, to its warehouse in Arlington, Texas, where it is stored for later distribution. About 31% of the carpet leaving Dalton for Arlington is designated at departure for a specific customer. Such carpet is considered "side-marked." The remaining "non-side-marked" carpet usually remains in Arlington for two to three months before being shipped to customers, 90% of whom are located in Texas. About 40% of the non-sidemarked carpet is cut to customer specifications in Arlington before shipment.

Because intrastate rates are about 38% higher than interstate rates, E & B employed Reeves, an interstate trucking firm, to transport the non-sidemarked carpet from Arlington to other points in Texas at interstate rates. E & B marks all the carpet from Dalton to Arlington with "storage-in-transit" pursuant to the storage-in-transit provision in Reeve's Interstate Commerce Commission (ICC) tariff. Various carriers transport the non-sidemarked carpet from Dalton to Arlington. The carpet is then stored in Arlington using Reeves's storage-in-transit tariff. E & B then purportedly matches bills of lading from the original movement with the bills from subsequent intrastate movements to ensure that each shipment from Arlington had a prior interstate movement. E & B argues this exercise makes the Dalton-to-Arlington-to-customer journey one continuous trip and, consequently, an interstate movement. Reeves transports only a small percentage of the non-sidemarked carpet within Texas; local, unregulated carriers and intrastate carriers charging the higher intrastate rates handle the remaining shipments. Reeves does not possess intrastate motor carrier authority from the Texas Railroad Commission but does possess a certificate of convenience and necessity issued by the ICC, and an in-transit tariff filed with the ICC.

The Texas Department of Public Safety initiated an investigation of Reeves, pursuant to article 911b, concerning 119 non-sidemarked shipments. Armstrong filed a declaratory order proceeding in the ICC for a determination that these shipments were interstate in character. Texas filed suit in state court against E & B and Reeves, alleging that Reeves transported E & B's carpet within Texas without first obtaining a permit or certificate from the Railroad Commission, in violation of article 911b, and that E & B aided and abetted that violation. Both sides filed motions for summary judgment. The district court granted summary judgment in favor of Texas.

■■■ In their first point of error, E & B and Reeves assert the district court erred in denying their plea in abatement and motion to suspend proceedings because the ICC has primary jurisdiction to determine the scope of its own certificates of authority under the supremacy clause of the United States Constitution, and because the doctrines of res judicata and collateral estoppel bar the state court from re-litigating the same legal issues pending before the ICC. We disagree.

"Res judicata" means that a matter has been adjudged, judicially determined or settled by judgment. *Abbott Laboratories v. Gravis*, 470 S.W.2d 639, 642 (Tex.1971); *Stewart v. City of Austin*, 744 S.W.2d 682, 684 (Tex.App.1988, writ ref'd). An existing final judgment rendered upon the merits by a court of competent jurisdiction upon a matter within its jurisdiction is conclusive of the rights of the parties in all other actions on the points at issue and adjudicated in the first suit. *Permian Oil Co. v. Smith*, 129 Tex. 413, 107 S.W.2d 564 (1937).

ICC declaratory orders repeatedly assert that they are not a resolution of disputed facts but rather an interpretation of the applicable law as it applies to a submitted set of facts. *See* Bigbee Transportation, Inc.—Transportation Within Alabama, Mississippi and Georgia—Petition for Declaratory Order, ICC Docket No. MC–C–30065 (served November 1, 1988); Victoria Terminal Enterprises, Inc.—Transportation of Fertilizer Within Texas—Petition for Declaratory Order, ICC Docket No. MC–C–30002 (served April 29, 1988); The Quaker Oats Company—Transportation Within Texas and California—Petition for Declara-

tory Order, ICC Docket No. MC–C–30006 (served March 8, 1988).

The ICC declaratory order regarding the E & B shipments was appealed to the United States Fifth Circuit. In its opinion that court stated:

> The ICC characterizes its declaratory order as intending "to do no more than determine the legal consequences of the factual predicate presented by Armstrong and Reeves." ICC Brief at 36. The order does not purport "to determine whether every individual shipment has moved lawfully in interstate commerce pursuant to Reeves' certificate." Armstrong II, No. MC–C–10963 at 8. As a result, the order would not protect Reeves from a state law regulatory proceeding if Texas were to prove facts different from those supposed by the declaratory order. The order assures Reeves that if it can prove a certain set of facts, Reeves may reasonably rely on its interstate certificate as authorization for its actions.

*State of Tex. v. U.S.*, 866 F.2d 1546, 1551 (5th Cir.1989).

The facts surrounding the 119 shipments were not adjudicated in the ICC hearing and the doctrines of res judicata and collateral estoppel do not apply. Moreover, the Texas Motor Carrier Act establishes primary jurisdiction and control of intrastate commerce over the highways in this State. *Railroad Commission of Texas v. Querner*, 150 Tex. 490, 242 S.W.2d 166, 169 (Tex.1951). We conclude the trial court properly refused to dismiss or abate the cause and we overrule the first point of error.

In their second point of error, E & B and Reeves assert the district court erred by granting summary judgment for Texas because disputed issues of material fact exist and Texas is not entitled to judgment as a matter of law. We agree.

When reviewing a summary judgment, we determine whether a disputed material fact issue exists, accepting as true the non-movant's version of the facts and summary judgment proof in the record, indulging every reasonable inference and resolving every doubt in favor of the non-movant. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867 (Tex.1984). It is the movant's burden to show that there is no genuine issue of material fact on any essential element and that he is entitled to a judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex. 1985); *see generally* Hittner, *Summary Judgments in Texas*, 22 Hous.L.Rev. 1109 (1985).

Whether transportation between points in a single state is interstate or intrastate in nature is determined by the "fixed and persisting intent" of the shipper, or others for whose benefit the shipment is made, at the time of the shipment. *Baltimore & Ohio Southwestern Railroad v. Settle*, 260 U.S. 166, 174, 43 S.Ct. 28, 31, 67 L.Ed. 189 (1922); *State of Texas v. U.S.*, 866 F.2d at 1556. The nature of any given shipment depends entirely upon the facts and circumstances surrounding that shipment. *Southern States Transportation v. State of Texas*, 774 S.W.2d 639 (1989). Evidence to consider when determining intent includes the presence of a storage interval, the use of through billing, uninterrupted movement, continuous possession, unbroken bulk, and the use of in-transit tariffs. *Settle*, 260 U.S. at 171, 43 S.Ct. at 30.

The facts included in the summary judgment proof show that the average storage in Arlington was between two to three months; the non-sidemarked carpet bills of lading showed the destination as Arlington, Texas; new bills of lading were created for the movements within Texas; bills of lading were purportedly matched to ensure a prior interstate movement with subsequent intrastate movements; some of the carpet was cut to customer order in Arlington; the carpet was stored under Reeves's in-transit storage tariff; and E & B paid state taxes on the carpet stored in Arlington.

The payment of state taxes on this carpet (a fact not included in the set of facts submitted to the ICC), the use of separate bills of lading, and the cutting of carpet in Arlington are probative evidence of intent for intrastate shipment within Texas. The ICC, however, considered the fact that in-

transit tariffs were used as highly probative of an intent to move a product in one continuous interstate movement. *Settle,* 260 U.S. at 172, 43 S.Ct. at 31.

Because intent "is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and weight to be given to their testimony," *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex. 1986), and the proof of intent submitted is inadequate to meet the State's burden to show there exists no genuine issue of material fact, we conclude that summary judgment was improper. The second point of error is sustained.

In their fifth point of error, E & B and Reeves assert the district court erred by overruling their motions to strike the pleas in intervention of Central and Merchants. They argue that private parties cannot enforce article 911b. Central and Merchants, however, need not rely on article 911b for their right to intervene because any party may intervene subject to being stricken by the court for sufficient cause on motion of the opposing party. Tex.R.Civ.P.Ann. 60 (1979). A party has a right to intervene if the intervenor could have brought the same action, or any part thereof, in his own name. *Helton v. Kimbell,* 621 S.W.2d 675 (Tex.App.1981, no writ). Whether someone should be permitted to intervene in a suit is subject to broad discretion by the trial court. *Galveston Bay Conservation and Preservation Ass'n v. Tex. Air Control Bd.,* 586 S.W.2d 634, 641 (Tex.Civ.App.1979, writ ref'd n.r. e.).

Both Central and Merchants had a private common law right to seek injunctive relief protecting their Texas certificates of authority from unfair and illegal competition by Reeves. *See generally Tugwell v. Eagle Pass Ferry Co.,* 74 Tex. 480, 13 S.W. 654 (1888); *Public Utilities Bd. v. Central Power & Light,* 587 S.W.2d 782, 786 (Tex.Civ.App.1979, writ ref'd n.r. e.); *Alamo Express v. Brown Express,* 234 S.W.2d 62, 73 (Tex.Civ.App.1950, writ ref'd n.r.e.).

We conclude the district court did not abuse its discretion in overruling E & B's and Reeves's motions to strike the intervention of Central and Merchants. The fifth point of error is overruled.

Because of our disposition herein, we need not reach the remaining points. The judgment of the district court is reversed and the cause remanded for trial.