# MEMORANDUM OPINION

No. 04-07-00860-CR

## EX PARTE Carlos MORALES-RYAN

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2007-CV6-001600-D3
Honorable Elma Salinas Ender, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:          Alma L. López, Chief Justice
                   Catherine Stone, Justice
                   Karen Angelini, Justice

Delivered and Filed:  June 11, 2008

AFFIRMED

Carlos Armin Morales-Ryan was indicted and arrested on thirteen counts of engaging in the practice of medicine without a license. Released on bond, Morales-Ryan filed an Application for Writ of Habeas Corpus which was denied. Morales-Ryan appeals.

## BACKGROUND

Morales-Ryan earned a degree of doctor in dental surgery and a certificate of oral surgery in Mexico. He also received a postdoctoral oral and maxillofacial surgery certificate in Puerto Rico. He then studied oral and maxillofacial surgery in Dallas, Texas at the Baylor Health Science Center, specializing in temporomandibular joint and orthognathic surgery. He further studied and

specialized in aesthetic (cosmetic) surgery in Plano, Texas. Because Texas does not have a separate license for oral and maxillofacial surgeons, Morales-Ryan's Texas dental license contains a special designation permitting him to administer anesthesia because he is also an oral and maxillofacial surgeon.

Morales-Ryan was indicted and arrested for operating a practice in which he engaged in non-dentistry and non-oral and maxillofacial surgeries including: tummy tucks, liposuction, and breast augmentation. At the hearing on Morales-Ryan's request for habeas relief, Morales-Ryan argued that he is qualified to perform the challenged procedures because he is a surgeon and, under the Texas Medical Practice Act[1] (the "Act"), "the terms 'physician' and 'surgeon' are synonyms." He challenged the validity of the indictment and the section of the Act upon which it was based. The State contended that, even if Morales-Ryan had been trained to perform such procedures, he was not qualified to perform such procedures in Texas because he is not a licensed physician. The trial court denied habeas relief.

### SCOPE OF PRETRIAL WRIT OF HABEAS CORPUS

"A defendant may use a pretrial writ of habeas corpus only in very limited circumstances." *Ex parte Smith*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005). A defendant may challenge the State's authority and manner of restraint and "may raise certain issues which, if meritorious, would bar prosecution or conviction." *Id.* "Because the denial of habeas corpus relief, based on fundamental constitutional principles, permits an interlocutory appeal," appellate courts will consider only those matters that are appropriate for pretrial review. *Id.* For example, a defendant may

---

[1] The Act is comprised of Subtitle B of the Texas Occupations Code, is entitled Physicians, and includes chapters 151 through 165 of the Texas Occupations Code. *See* TEX. OCC. CODE ANN. chs. 151-165 (Vernon 2004 & Vernon Supp. 2007).

challenge the constitutionality of a statute but may not use the writ to directly challenge the sufficiency of an indictment. *Id.*

Morales-Ryan contends the sections of the Act under which the State brought the charges against him are unconstitutional. Specifically, Morales-Ryan claims: (1) the relevant statutes are void for vagueness, violate Morales-Ryan's guarantee of due process, and invalidate the indictment; (2) a court may not freely interpret the Act contrary to the legislature's intent; and (3) the sections of the Act violate both article XVI, section 31 of the Texas Constitution and the Dormant Commerce Clause. These claims by Morales-Ryan fall within the permissible scope of a pretrial writ and will be addressed below. *See Ex parte Weise*, 55 S.W.3d 617, 620-21 (Tex. Crim. App. 2001) (indicating appropriate issues for a pretrial habeas application are issues that, when resolved in favor of the applicant, would result in his immediate release including the facial constitutionality of a statute and the indictment based on such a statute).

## STANDARD OF REVIEW

When a statute is attacked as unconstitutional, we begin our analysis with the presumption that the statute is valid and that the legislature acted reasonably in enacting the statute. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978). The challenger bears the burden to establish the statute's unconstitutionality. *Id.* We will sustain a statute's validity if we determine that any construction supports a reasonable intendment or allowable presumption. *Id.*

## VAGUENESS

Morales-Ryan contends the Act is void for vagueness. Criminal laws must fairly warn individuals of what activity is forbidden. *Weyandt v. State*, 35 S.W.3d 144, 155 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (quoting *Margraves v. State*, 996 S.W.2d 290, 303 (Tex.

App.—Houston [14th Dist.] 1999), *rev'd on other grounds*, 34 S.W.3d 912 (Tex. Crim. App. 2000)). "A statute which forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Cotton v. State*, 686 S.W.2d 140, 141 (Tex. Crim. App. 1985). We make two inquiries to determine if a statute is vague. *Weyandt*, 35 S.W.3d at 155. A statute is unconstitutionally vague if either: (1) people of ordinary intelligence cannot ascertain what activity is forbidden by the statute; or (2) the statute encourages arbitrary arrests or prosecution. *Id.*; *see also Cotton*, 686 S.W.2d at 141.

The State charged Morales-Ryan with thirteen counts of "intentionally or knowingly engag[ing] in the practice of Medicine, to-wit: Cosmetic Surgery without a license in violation of Texas Occupations Code Chapter 165 Section 152;[2] to-wit: Carlos Morales-Ryan performed a [variety of non-dentistry surgical procedures] on [patients]." Section 165.152 entitled Practicing Medicine in Violation of Subtitle sets forth:

> (a) A person commits an offense if the person practices medicine in this state in violation of this subtitle.
> (b) Each day a violation continues constitutes a separate offense.
> (c) An offense under Subsection (a) is a felony of the third degree.
> (d) On final conviction of an offense under this section, a person forfeits all rights and privileges conferred by virtue of a license issued under this subtitle.

TEX. OCC. CODE ANN. § 165.152 (Vernon 2004). In order to determine what constitutes practicing medicine without a license in violation of the subtitle, we look to section 155.001 of the Act which states: "A person may not practice medicine in this state unless the person holds a license issued

---

[2] Section 165.152 is contained in the Act.

under this subtitle." Tᴇx. Occ. Cᴏᴅᴇ Aɴɴ. § 155.001 (Vernon 2004). "Practicing medicine" is defined under the Act as:

> "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who:
>   (A) publicly professes to be a physician or surgeon; or
>   (B) directly or indirectly charges money or other compensation for those services.

Tᴇx. Occ. Cᴏᴅᴇ Aɴɴ. § 151.002 (a)(13) (Vernon Supp. 2007). A "physician" is defined as "a person licensed to practice medicine in this state," and the terms "physician" and "surgeon" are used synonymously. *Id.* at (a)(12), (b). "Surgery" includes "surgical services, procedures, and operations." *Id.* at (a)(14)(A). Section 151.052 exempts licensed dentists who are engaged strictly in the practice of dentistry from the Act. Tᴇx. Occ. Cᴏᴅᴇ Aɴɴ. § 151.052 (Vernon 2004).

Morales-Ryan contends the sections of the Act upon which his indictment is based are so vague that they violate his due process rights of fair notice and fail to establish an ascertainable offense.[3] Morales-Ryan also argues that the Act's use of "physician" and "surgeon" as interchangeable terms creates an "ambiguity that would tend to mislead a person of ordinary intelligence" and "encourage erratic and arbitrary prosecution."[4]

---

[3] Although Morales-Ryan's writ application initially refers to both sections 165.152 and 165.159 of the Act, the State's indictment is based only on section 165.152. The State and defense counsel apparently stipulated during the hearing "that no assertion has been made as to [section] 165.159." The State's counsel also emphasized "we're not proceeding on [section] 165.159." *See* Tᴇx. Occ. Cᴏᴅᴇ Aɴɴ. § 165.159 (Vernon 2004). Consequently, we have not addressed Morales-Ryan's contentions regarding that section of the Act.

[4] The State initially charged Morales-Ryan with illegally performing rhinoplasty but indicated during the hearing that it had abandoned those allegations because it determined rhinoplasty was a surgery of the maxillofacial region, governed by the Dental Practice Act. *See* Tᴇx. Occ. Cᴏᴅᴇ Aɴɴ. chs. 251-267 (Vernon 2004 & Vernon Supp. 2007). Morales-Ryan argues that the fact he was originally charged with performing rhinoplasty surgery confirms his contention that the Act leads to erratic and arbitrary prosecution. Because the maxillofacial region includes the mouth, jaws, face, and skull which necessarily includes the nose, the exclusion of rhinoplasty from the procedures for which a license is required under the Act is clear on the face of the statutes and does not lead to erratic and arbitrary prosecution as evidenced by the State's voluntary abandonment of the allegations.

The Act clearly makes it a felony offense to practice medicine (including performing surgery) without a license. TEX. OCC. CODE ANN. §§ 155.001, 165.152 (Vernon 2004). The Act also excludes from its coverage dentists engaged strictly in the practice of dentistry because they are regulated by the Dental Practice Act. TEX. OCC. CODE ANN. §§ 151.052, 251-266 (Vernon 2004 & Vernon Supp. 2007); *see also Kelley v. Tex. State Bd. of Med. Exam'rs*, 467 S.W.2d 539, 543-44 (Tex. Civ. App.—Fort Worth 1971, writ ref'd n.r.e.), *cert. denied*, 405 U.S. 1073 (1972). "The Medical Practice Act, as well as the definition of 'practicing medicine,' has been sustained as valid—not only by [the court of criminal appeals], but also by the Supreme Court of the United States." *Ex parte Halsted*, 147 Tex. Crim. 453, 182 S.W.2d 479, 483 (1944) (citing several Texas cases considered by the Supreme Court). Although section 151.052 exempts licensed dentists who are engaged strictly in the practice of dentistry from the Act's regulations, TEX. OCC. CODE ANN. § 151.052 (Vernon 2004), "[a] person who is duly licensed as a dentist is not authorized to practice medicine unless he is also duly licensed to practice medicine pursuant to [chapter 155 of the Act]." *Kelley*, 467 S.W.2d at 542.

While Morales-Ryan is licensed to practice dentistry in Texas, he is not licensed to practice medicine in Texas. As a dentist with a dental specialty, Morales-Ryan is licensed to perform oral and maxillofacial surgery which is limited to "the diagnosis of and the surgical and adjunctive treatment of diseases, injuries, and defects involving the functional and aesthetic aspects of the hard and soft tissues of the oral and maxillofacial region." *See* TEX. OCC. CODE ANN. § 251.003(c) (Vernon 2004). The State alleged Morales-Ryan performed surgical liposuction, abdominoplasty (tummy tuck), and augmentation mammoplasty (breast augmentation). Each of these challenged procedures falls within the statutory definition of practicing medicine, *see* TEX. OCC. CODE ANN.

§ 151.002(a)(13) (Vernon Supp. 2007), and falls outside the statutory definition of practicing dentistry, including oral and maxillofacial surgery. *See* TEX. OCC. CODE ANN. § 251.003(a)-(c) (Vernon 2004). Applying the Act to Morales-Ryan's specific conduct, the challenged surgical procedures were not strictly dentistry procedures and were not procedures Morales-Ryan was licensed to perform under either his dentistry license or his oral and maxillofacial surgery specialty because they were performed on regions of the body beyond the oral and maxillofacial region. *See id.*; *Kelley*, 467 S.W.2d at 544. Morales-Ryan was not, therefore, "within the exception provided by law, as it apples to dentists." *Kelley*, 467 S.W.2d at 544. Furthermore, while performing the alleged surgical procedures, Morales-Ryan held himself out to be a surgeon who would perform the procedures for compensation, as evidenced by his web site, in violation of the Act. *See* TEX. OCC. CODE ANN. § 151.002(a)(13)(B) (Vernon Supp. 2007). The Act, therefore, provided fair notice of the forbidden acts to persons of ordinary intelligence such as Morales-Ryan and any law enforcement officials who might use the Act to prosecute Morales-Ryan. *See Cotton*, 686 S.W.2d at 141; *Weyandt*, 35 S.W.3d at 155. We conclude Morales-Ryan has failed to show the Act is unconstitutionally vague or denies him due process of law. *Bynum v. State*, 767 S.W.2d 769, 773 (Tex. Crim. App. 1989).

Morales-Ryan further claims that the "rule of lenity" requires resolution of the vagueness question in favor of Morales-Ryan. The rule of lenity applies when a statute is ambiguous. *Cuellar v. State*, 70 S.W.3d 815, 819 n.6 (Tex. Crim. App. 2002). Although Morales-Ryan contends the Act's use of "physician" and "surgeon" as interchangeable terms creates an ambiguity, we disagree. First, the Act is comprised of subtitle B and is entitled Physicians. *See generally* TEX. OCC. CODE ANN., tit. 3, subtit. B (Vernon 2004). The Act also defines physician, surgery, and practicing

medicine. *See* TEX. OCC. CODE ANN. § 151.002 (a) (Vernon Supp. 2007). Next, the Dental Practice Act, found in subtitle D and entitled Dentistry, specifically defines the practice of oral and maxillofacial surgery. *See* TEX. OCC. CODE ANN. § 251.003(c) (Vernon 2004). Thus, these statutes clearly differentiate between a dentist oral and maxillofacial surgeon and a physician surgeon. *See Kelley*, 467 S.W.2d at 544. Morales-Ryan emphasized this difference during his own testimony when he stated:

> Now, there are medical doctors that want to go to practice oral/maxillofacial surgery and [the dentistry board is] debating in what to do with them as they have [a] medical degree. So now, they are going to be able to do that, but they need to go to dental school and have an advanced-standing training, performing three years of dental school in order to become—first become a dentist and then do oral/maxillofacial surgery.

Because the Act clearly differentiates physician and surgeon from oral and maxillofacial surgeon, the Act is not ambiguous, and the rule of lenity does not apply. *See Cuellar*, 70 S.W.3d at 819 n.6.

Having determined the Act is not vague or ambiguous, we will address Morales-Ryan's contention that the indictment fails to state an offense or clarify the elements of the offense. The indictment charged Morales-Ryan with "intentionally or knowingly engag[ing] in the practice of Medicine, to-wit: Cosmetic Surgery without a license in violation of Texas Occupations Code Chapter 165 Section 152" by performing non-dentistry surgical procedures on patients. The elements of the alleged offense are: (1) intentionally or knowingly; (2) practicing medicine; (3) without a license (in violation of section 165.152). Morales-Ryan argues that "the text of the relevant statutes does not penalize the practice of medicine without a license but rather the failure to register." He bases this argument on his reading of section 165.152 in conjunction with section 311.006 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 311.006(2) (Vernon 2005); TEX. OCC. CODE ANN. § 165.152 (Vernon 2004). Section 165.152 states: "A person commits an

offense if the person practices medicine in this state in violation of ***this subtitle***." TEX. OCC. CODE ANN. § 165.152 (Vernon 2004) (emphasis added). Section 311.006 of the Texas Government Code states "a reference to a subtitle, subchapter, subsection, subdivision, paragraph, or other numbered or lettered unit without further identification is a reference to a unit of the next larger unit of the code in which the reference appears." *See* TEX. GOV'T CODE ANN. § 311.006(2) (Vernon 2005). Applying section 311.006, Morales-Ryan contends "a unit of the next larger unit of the code in which the reference appears" refers to subchapter D so that section 165.152 would be read as "A person commits an offense if the person violates ***subchapter D***." *See* TEX. GOV'T CODE ANN. § 311.006 (Vernon 2005). Morales-Ryan contends the only applicable offense found in subchapter D is practicing medicine without complying with the registration requirements; therefore, the indictment is insufficient. Contrary to Morales-Ryan's argument, however, section 165.152 is part of chapter 165 which is "a unit of the next larger unit" called "Subtitle B" and known as the Medical Practice Act. Furthermore, section 165.152 explicitly uses the word "subtitle," instead of subchapter, subsection, subdivision, or paragraph, in its title as well as in its text. The "subtitle" to which section 165.152 refers, therefore, is "Subtitle B."

Additionally, Morales-Ryan's argument overlooks section 311.011(a) which states "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005). In context and according to the rules of grammar and common usage, "this subtitle" means the subtitle that is "close by" or "previously mentioned." The "closest" subtitle that was "previously mentioned" is subtitle B. Section 155.001 of subtitle B makes having a license a requirement to practice medicine.

Consequently, Morales-Ryan's reading of section 311.006 is without merit, and the indictment clearly states an offense and its elements. Morales-Ryan's first point of error is overruled.

## JUDICIAL INTERPRETATION

In Morales-Ryan's second point of error, he contends that if the statutes are vague, this court is prohibited from interpreting the statutes in a manner that contradicts the legislature's instructions. We agree. *Morter v. State*, 551 S.W.2d 715, 718 (Tex. Crim. App. 1977); *Ex parte Halsted*, 182 S.W.2d at 481-82. However, because we conclude the Act is not vague, we need not consider these issues.

## TEXAS CONSTITUTION ARTICLE XVI § 31

Morales-Ryan argues the Act violates article XVI's prohibition against granting a preference for one school of medicine over another. Article XVI, section 31 of the Texas Constitution sets forth: "The [l]egislature may pass laws prescribing the qualifications of practitioners of medicine in this State, and to punish persons for malpractice, but no preference shall ever be given by law to any schools of medicine." TEX. CONST. art. XVI, § 31. According to Morales-Ryan, "the [l]egislature has no power to punish a fully trained, accredited and licensed oral and maxillofacial surgeon, for allegedly practicing outside of the scope of his expertise. Such . . . conduct would violate the state['s] constitution[] . . . [by] stating that certain types of surgeons can only perform certain types of procedures."

The *Kelley* case addressed whether the legislature could "draw the line between the practice of dentistry and the practice of medicine." *Kelley*, 467 S.W.2d at 544. Relying on *Ex parte Halsted*, the court held the "[l]egislature by statute may make reasonable classifications of practitioners. Such classifications are not inhibited by the provisions of the [Fourteenth] Amendment to the Federal

Constitution." *Id.* at 543-44. Although the *Kelley* court did not specifically address whether the distinction between dentists and physicians violated article XVI, section 31 of the Texas Constitution, the court in *Halsted* used the then-current Dental Practice Act[5] as an example of a statute that did not violate article XVI, section 31, "the validity of which ha[d] been sustained by the courts." *Ex parte Halsted*, 182 S.W.2d at 485. The *Halsted* court went on to say "the dentist is restricted to a certain part of the human body. He is not authorized to treat the body generally for a disease or disorder." *Id.* at 486. Morales-Ryan admittedly performed surgical procedures beyond the oral and maxillofacial region that were not directly related to the oral and maxillofacial region. TEX. OCC. CODE ANN. § 251.003 (Vernon 2004). Because the legislature does not give preference to one school of medicine over another by distinguishing between two schools and punishing those who perform the practices of a school from which they are not licensed, Morales-Ryan's third point of error is overruled. *Ex parte Halsted*, 182 S.W.2d at 486.

## DORMANT COMMERCE CLAUSE

Finally, Morales-Ryan contends the Act violates the Dormant Commerce Clause. Congress has the express power to regulate foreign and interstate commerce. U.S. CONST., art. I, § 8, cl. 3; *R.R. Comm'n of Tex. v. Querner*, 150 Tex. 490, 242 S.W.2d 166, 170 (1951). Conversely, states retain the power to regulate local and intrastate commerce even if it has some effect on interstate commerce. *S. Pac. Co. v. Ariz., ex rel. Sullivan*, 325 U.S. 761, 767, 770 (1945). According to the Supreme Court, the Commerce Clause implicitly prohibits states from regulating certain commerce if the state's regulations unduly burden interstate commerce, even where Congress has failed to

---

[5] *See generally* Vernon's Ann. P.C. arts. 751-754a (1925). This repealed Dental Practice Act is substantially the same as the current Dental Practice Act.

legislate on the subject. *Id.* at 768-69; *see also Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179-80 (1995). This implicit principle is known as the Dormant Commerce Clause.

Morales-Ryan claims the Act violates the Dormant Commerce Clause because "it constitutes a state imposed regulation of interstate commerce that is discriminatory to a particular school of medicine—oral and maxillofacial surgeons and unfairly protects surgeons who hold medical licenses." Morales-Ryan contends "[i]t creates less competition for MDs in the State of Texas." The Dormant Commerce Clause may be violated when a state's regulations tend to favor its citizens over that of another state. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986); *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 351-52 (1977). Texas's licensing requirements for medical doctors and dentists do not restrict doctors who practice in Texas from practicing in other states or countries according to the licensing requirements relative to the particular state or country. *See generally* TEX. OCC. CODE ANN. chs. 151-260 (Vernon 2004 & Vernon Supp. 2007). Although maxillofacial surgeons licensed in another state may practice in Texas only if they are licensed in Texas, and while these oral surgeons may not perform the same procedures in Texas that they perform in other states, the Texas statutes do not favor one maxillofacial surgeon over another based on where else the dentist may or may not be licensed. *See* TEX. OCC. CODE ANN. chs. 251, 256-260 (Vernon 2004 & Vernon Supp. 2007). All maxillofacial surgeons in Texas are held to the same standard and are regulated evenhandedly.[6] *See id.*; *see also Brown-Forman Distillers Corp.*, 476 U.S. at 579. Furthermore, Texas's licensing statutes were created for the health, safety, and welfare of its citizens and are, therefore, a proper exercise of the

---

[6] Morales-Ryan contends Texas's statutes discriminate against oral maxillofacial surgeons and protect surgeons who are medical doctors. This argument goes to the constitutionality of the statute vís-a-vís the Fourteenth Amendment and article XVI, section 31 of Texas Constitution rather than the Dormant Commerce Clause. We previously addressed this argument in the relative sections above.

Texas's police power. *See* TEX. OCC. CODE ANN. §§ 151.003(1) (Vernon 2004) (stating "as a matter of public policy it is necessary to protect the public interest through enactment of this subtitle to regulate the granting of [the privilege to practice medicine] and its subsequent use and control"), 251.001 revisor's n. (recognizing "the purpose of the Dental Practice Act is to assure that the people of the State of Texas receive the highest quality dental care"); *Head v. N.M. Bd. of Exam'rs in Optometry*, 374 U.S. 424, 428-29 (1963); *Ex parte Halsted*, 182 S.W.2d at 482.  Because Texas's regulation of its health professions protects the safety of its citizens and does not unduly impact interstate commerce, we overrule Morales-Ryan's fourth point of error.  *Head*, 374 U.S. at 428-29.

## CONCLUSION

Based on the foregoing reasons, we conclude the trial judge did not err in denying Morales-Ryan's writ of habeas corpus.  We affirm.

Karen Angelini, Justice

DO NOT PUBLISH